## JOHN SULLIVAN v. JOHN C. SULLIVAN.

[See 76 Mich. 101.]

*Statute of frauds—Contract of sale—Conflict of laws—Delivery and acceptance of goods under verbal order.*

1. Where goods are shipped from another state into Michigan on a *verbal* order, the contract is governed by the laws of the place of shipment. *Kling v. Fries*, 33 Mich. 275.
2. A *verbal* order, followed by the delivery and acceptance of the goods, is enough, under our statute of frauds, to complete the sale.

Error to Wayne. (Brevoort, J.) Argued May 22, 1888. Decided June 8, 1888.

Trover. Defendant brings error. Reversed. The facts are stated in the opinion.

*Corliss, Andrus & Leete* (*John Atkinson,* of counsel), for appellant.

*Dickinson, Thurber & Stevenson,* for plaintiff.

CAMPBELL, J.   Plaintiff sued defendant in an action of trover for the conversion of two barrels of whisky, which plaintiff claimed to own.   The facts, aside from some questions as to the admission of testimony, were these:   Plaintiff is a liquor dealer, in the wholesale business, at Cincinnati, having a distillery at Frankfort, Ky.   Early in February, 1887, plaintiff, being in Detroit, took a verbal order from Ryan & McCarney, of Detroit, for two barrels of whisky, and sent it to the distillery at Frankfort, where the order was filled, and the whisky shipped to Detroit by the only railroad out of Frankfort, on February 19.   February 26 one of the firm of Ryan & McCarney sent plaintiff the following telegram:

"Cancel order.   Will explain by mail."

Plaintiff responded:

"Goods were shipped on 21st.   Receive, and await further advice."

No letters were written by either party, and no other communication passed till the whisky was disposed of.   It arrived in Detroit in due time, and Ryan & McCarney paid the freight, and put the whisky among their stock.

On March 9, defendant, who had an account against Ryan & McCarney of $215 for a balance of goods sold them, purchased the whisky for $220, receipting his account, and paying $5 in addition, and the whisky was delivered to him and taken away.   He bought in good faith, and without notice of any claim against the property.   On the same day and later, Ryan requested one Roe to telegraph the failure of his firm to some outside creditors, and Roe sent this dispatch to plaintiff:

"Ryan & McCarney failed to-day.    Goods not opened.
                              " E. RYAN."

Ryan did not see this dispatch before it was sent, and Roe testifies that the reference to the goods was not dictated to him, but inserted of his own motion.    But the testimony is clear that it was sent after the sale to defendant.

Plaintiff came on to Detroit, and, learning that defendant had and claimed the whisky, demanded it, and brought this action.

The court below, after giving a number of instructions on various questions, charged the jury, who came in, and said they could not agree.    The jury then asked the judge whether Ryan & McCarney would, under the circumstances, after payment of freight, have been liable to plaintiff for the price of the goods, if solvent.    The judge charged that they would not.    On being told by defendant's counsel that a specified charge had been given that was to a different effect, the court said he had not so charged.    The court further charged that, Ryan & McCarney having notified plaintiff that they did not want the goods, these might have remained there from that time until this day, and Ryan & McCarney could not have been liable for the value of them.    The jury then found for plaintiff.

There was no proof that there was any statute of frauds in Ohio similar to ours; and it was held in several cases by this Court that where articles are ordered, as they were here, verbally, to be shipped from a place in another state, directed here, and are so shipped, the contract is not a Michigan contract, and is governed by the law of the place of shipment. *Kling v. Fries*, 33 Mich. 275.    This being so, there was a completed sale, so far as shown by the testimony, at common law, and presumptively good under the laws of Ohio.    This is without reference to the question of delivery under our own law.    The sale was therefore valid as a common-law sale, for anything that appears on the record.

But there was sufficient evidence to make out a sale under our own law. A verbal order, followed by delivery and acceptance, is enough, under the statute of frauds, to complete the sale. In this case the goods were shipped on the order, and were on their way before anything was suggested to the contrary. When received here, the testimony is undisputed that Ryan & McCarney received and treated the goods as their own, and construed plaintiff's telegram as authorizing them to do so. Their telegram to cancel was sent too late to stop the shipment, and recognized the existence of an order to ship. It proposed an explanation by letter, which, after receiving plaintiff's dispatch, was never sent, and from the testimony it appears they regarded the plaintiff's dispatch as indicating that it was too late to cancel. Plaintiff did not follow up his own telegram by any letter or acceptance of the cancellation, and Ryan & McCarney supposed they were bound to carry out their bargain, and acted accordingly. An acceptance would, under our statute, complete the sale if the order was carried out as given; and the shipment made, and not so countermanded as to change its purpose, would be, when the goods arrived, if not before, a valid delivery. Plaintiff offered no testimony of a rescission; and until rescinded the transaction could not be anything but a sale after the goods arrived at Detroit, and were accepted as a purchase, and not as a consignment. As this case went to the jury, it was entirely barren of testimony that plaintiff had any idea of recalling his sale until after he was told of Ryan & McCarney's failure. His mind and theirs never met on any such understanding, and there can be no doubt that the verbal contract, when executed, covered the order as well as the delivery.

Without passing on the question whether a *bona fide* purchaser will not be protected against a vendor who delivers property to a vendee, and gives him all the evidences of title, without enabling honest buyers to guard against frauds, we

think that there was such a case as would authorize and require a jury to find that defendant owned the whisky.

Judgment must be reversed, and a new trial ordered.

The other Justices concurred.