JOHN SULLIVAN v. JOHN C. SULLIVAN.

[See 70 Mich. ——.]

*Vendor and vendee—Acceptance of goods.*

The *controlling* question in this case, upon the present record, is held to be whether the whisky ordered of plaintiff was accepted by defendant's vendors and treated as a part of their own goods, or whether the order was countermanded and the goods held for the plaintiff pursuant to his direction ; which question is held to have been fairly submitted to the jury, and, being found in favor of the plaintiff, the judgment in his favor for the value of the property is affirmed.

Error to Wayne. (Brevoort, J.) Argued June 5 1889. Decided July 11, 1889.

Trover. Defendant brings error. Affirmed. The facts are stated in the opinion, and in the one filed on the former

hearing, reported in 70 Mich. —— (38 N. W. Rep. 472)..

*Corliss, Andrus & Leete,* for appellant.

*Dickinson, Thurber & Stevenson,* for plaintiff.

LONG, J. This case was heard at the June term of this Court, 1888, and is reported in 70 Mich. —— (38 N. W. Rep. 472). In that trial the plaintiff had verdict and judgment, which were reversed on the hearing here, and the case remanded for a new trial. The facts were fully stated in the opinion by Mr. Justice CAMPBELL as they appeared upon that record.

It is claimed by the plaintiff on the present hearing that on the first trial in the court below he was unable to procure the testimony of Mr. McCarney, which is now produced, and that it now appears that Ryan & McCarney received and held the goods as the property of the plaintiff, and not as their own, and that there was ample evidence to warrant this conclusion.

Another contention is the same as on the former hearing, that the contract was not an Ohio contract, but a Michigan contract, and one controlled by the laws of Michigan.

At the close of the testimony the counsel for defendant asked the court to take the case from the jury on the ground that the plaintiff had failed to make out his case ; that it was an Ohio contract; and that it was a completed sale as soon as the goods were shipped; and that Ryan & McCarney received the goods under the contract.

This the court refused, but instructed the jury that if, at the time the goods were received by Ryan & McCarney, they paid the $4.50 for freight, and mingled them with their stock, and turned them out in good faith to the defendant, then the plaintiff could not recover; but if they were not so received under the contract, and not sold in good faith by

Ryan & McCarney, they remained the goods of the plaintiff, and for which he should recover.

The defendant asked the court to instruct the jury as follows:

"1. It appears by the evidence that the goods were verbally ordered at Detroit in the usual course of trade, on credit, and that the plaintiff went to Ohio, and there shipped the goods in accordance with the terms of the sale; and under the decision of the Supreme Court in this case the contract was an Ohio contract, and the sale completed when the goods were shipped. The plaintiff cannot, therefore, recover, and your verdict must be for the defendant.

"2. It appears by the evidence that the goods were ordered in the usual course of trade, on credit, and shipped by the plaintiff from Cincinnati, in accordance with the terms of sale, when he received the telegram from Ryan & McCarney, to which he replied, ' Goods shipped on the twenty-first inst. Receive and hold for further advice.' Ryan & McCarney received and accepted the goods, paid the freight upon them, and placed them in their store; and it does not appear by the evidence that the minds of the parties ever met to change or vary the terms of the original contract.

"3. It is admitted that Ryan & McCarney received the goods, paid the freight on them, and put them in their store ; and if you find from the evidence that they treated them as part of their own goods, and defendant purchased in good faith, the plaintiff cannot recover, and your verdict must be for the defendant.

"4. If you find from the evidence that John C. Sullivan bought the goods in good faith, without knowledge of the plaintiff's claim, he is a *bona fide purchaser* without notice, and your verdict must be for the defendant."

These requests the court refused to give in his charge to the jury, except the third, which the court substantially gave in his general charge.

The question whether it was a Michigan or an Ohio contract does not now become important, in the view we take of the case presented on this record.

The testimony of McCarney, which was not in the former case, now presents issues which were not then raised. Mr.

McCarney was not called as a witness on the former trial. He is now produced, and testifies that he learned of the agreement to purchase the whisky from his partner, Mr. Ryan, and that on February 26, 1887, Ryan & McCarney sent a telegram to plaintiff as follows:

" Cancel order.   Will explain by mail."

The goods were then in Detroit, or on their way there, having been shipped before that date by plaintiff.   In reply to this the plaintiff telegraphed them:

" Whisky shipped you on twenty-first inst.   Receive and hold until further advised."

McCarney says that on receipt of this telegram he took the whisky from the warehouse, and paid the freight upon it; that this was done in obedience to the request of plaintiff contained in his telegram.   From Mr. McCarney's testimony it appears that these whiskies were taken to their place of business, but were not put in the store-room with the other liquors, but in what was called the " middle room "; that he afterwards sold out his interest in the business to Mr. Charles E. Reynolds, but exempted these barrels from the sale, advising Reynolds that they belonged to Sullivan, of Cincinnati; that the reason he canceled the order was that his firm did not need the whisky, and were somewhat financially embarrassed.   Mr. McCarney says that a few days thereafter he received the letter from plaintiff.   This letter is not produced, however, and its contents not disclosed.

If the testimony of McCarney is to be believed, then the firm of Ryan & McCarney acted upon the theory that the purchase and sale, though binding upon the parties by the selection of the whisky in Ohio, was abandoned and rescinded, and thereafter held it as the property of the plaintiff, and treated it as such.   This was contradicted by Mr. Ryan, who was called as a witness for the defendant.   Mr. Ryan testified that they received the whisky in the usual course of their

business, and that it was placed with their other goods, and that he sold it to the defendant; that the firm owed defendant on account the sum of $215; and the two barrels of whisky were turned over to him for $5 more than this bill, which defendant paid in cash to him. It appears that, on the same day this sale is claimed to have been made to the defendant, Ryan himself directed one John Roe, who was formerly in the employ of defendant in his cigar business, to telegraph the plaintiff and the other creditors of Ryan & McCarney that the firm had failed, and Roe sent the following telegram:

"Ryan & McCarney failed to day. Goods not opened.
"E. RYAN."

Mr. Ryan says that he was not aware that the words, "Goods not opened," appeared in the telegram, and that the telegram was sent to plaintiff after he had sold the whisky to the defendant. The issue of fact was therefore squarely made by the testimony of McCarney (which was not in the former record) and Ryan as to whether there was an acceptance of the cancellation of the order upon which Ryan & McCarney acted. According to the testimony of McCarney, the firm treated the whisky as belonging to the plaintiff, and took it from the warehouse to hold for him in accordance with the instructions contained in plaintiff's telegram; while Ryan's claim is that, notwithstanding this telegram to cancel the order, and the plaintiff's direction in answer thereto to hold until further advised, the firm treated the whisky as their own, mixed it with their own goods, and made the sale in good faith to the defendant. This became a question of fact for the jury, under all the circumstances, and is the controlling fact in the case, whether the contract was completed in Michigan or Ohio. If this was fairly submitted to the jury, then the other facts contained in the defendant's request to charge were wholly immaterial, and the refusal of the court to give them was not error prejudicial to the defendant.

The court instructed the jury as follows:

"Now, gentlemen of the jury, the question which I submit to you is this: At the time these goods were received here by Ryan & McCarney, did they accept them in the usual course of trade in business? Did they treat the goods as part of their own goods? And if they did, then, gentlemen, the plaintiff cannot recover. But if, on the other hand, gentlemen, after weighing all the evidence, and giving it such consideration as you think it entitled to, you come to the conclusion that Ryan & McCarney did not treat these goods as their own, then your verdict shall be for the plaintiff."

We think this was a fair submission of the question, and, that fact being found, the other questions become unimportant.

Some question is raised by counsel for appellant about the manner of proving the contents of these telegrams.

We do not, however, think there is any force in the objections made, and shall not discuss them.

The question of the good faith of the defendant in the purchase is not involved. If the title to the goods was not in Ryan & McCarney at the time of the pretended sale to the defendant, then the defendant got no title, and plaintiff had a right of recovery. This was settled by the finding of the jury upon the other questions.

The judgment of the court below must be affirmed with costs.

The other Justices concurred.

---

[1] The telegrams were proved by copies, and the objection was that they were not sufficiently authenticated, nor the non-production of the originals sufficiently excused