ERICSSON MANUFACTURING CO. *v.* CAILLE BROS. CO.

1. PRINCIPAL AND AGENT — CONTRACTS — AUTHORITY OF AGENT — RATIFICATION.

> It is immaterial whether an agent of a corporation had authority to make an oral contract for work and labor to be done for the corporation, where it repeatedly admitted the existence of an oral contract in subsequent correspondence.

2. SAME—SALES—CONTRACTS—PLACE OF SALE—FOREIGN CORPORATIONS—PRESUMPTIONS.

> Where an oral order for machinery was personally taken within the State by the vice president and general manager of a foreign corporation, it must be presumed that such officer had authority to accept the order so as to constitute such contract one made within the State.

3. SAME—AUTHORITY OF PURCHASING AGENT—PRESUMPTIONS.

> In the absence of evidence to the contrary, it will be presumed that the purchasing agent of defendant corporation had authority to purchase the machinery.

4. SALES—MANUFACTURED ARTICLE — WORK AND LABOR — FRAUDS, STATUTE OF.

> A contract for an article which, while of a general character coming within the seller's line of manufacture, is not in detail of a kind which it regularly makes up and usually has for sale in the common course of business, but is made especially for the buyer according to specifications, is a contract for work and labor, and not of sale.

5. FRAUDS, STATUTE OF—SALES—MANUFACTURED ARTICLE — WORK AND LABOR.

> An agreement by one to construct an article especially for or according to the plans of another, whether at an agreed price or not, although the transaction is to result in the sale of the article, is a contract for work and labor and is not within the statute of frauds, but if the article to be made and delivered is of a kind which the producer usually has for sale, in the course of his business, it is a contract for sale and must be in writing.[1]

---

[1] On distinction between sales of personalty and agreements for work and labor, see notes in 14 L. R. A. 230; 30 L. R. A. (N. S.) 319; 43 L. R. A. (N. S.) 97.

Error to Wayne; Kendrick, J., presiding. Submitted January 2, 1917. (Docket No. 3.) Decided March 30, 1917. Rehearing denied September 28, 1917.

Assumpsit by Ericsson Manufacturing Company against Caille Brothers Company for goods sold and delivered. Judgment for plaintiff on a directed verdict. Defendant brings error. Affirmed.

*A. W. Sempliner,* for appellant.

*Clarence P. Milligan,* for appellee.

STEERE, J. Plaintiff is a manufacturing corporation of Buffalo, N. Y., especially engaged in making and selling telephones and magnetos. Defendant is a Michigan corporation located in Detroit, and at the time events involved in this controversy arose was engaged, among other things, in making and about to put on the market a small outboard or portable motor appliance for rowboats and launches. This action was brought to recover for 50 small magnetos to be used in that connection, claimed to have been manufactured by plaintiff in 1913, and shipped to defendant under a special order for the same, at an agreed price of $18 each, but which when delivered defendant refused to accept and pay for.

Plaintiff declared upon the common counts in assumpsit, and defendant pleaded the general issue. The case was tried before a court and jury in the circuit court of Wayne county in April, 1916. At the conclusion of plaintiff's testimony defendant also rested without offering any evidence, and counsel requested a directed verdict in its favor on the ground that the alleged contract was void under the statute of frauds, and no authority was shown on the part of Mr. Howe, by whom the order was given, to contract for defendant. Plaintiff's counsel also requested a directed verdict in its favor, and after hearing arguments the

court instructed the jury to render a verdict in plaintiff's favor for the sum of $900, being the purchase price of the 50 magnetos, with interest at 5 per cent. from the date of shipment, apparently computed without dispute at $103.19. A judgment on directed verdict was thereafter entered for $1,003.19.

The claims made and argued in defendant's brief are that the alleged contract was void under the statute of frauds, being for the purchase of articles which the producer advertised in its catalogues for general sale and handled in the usual course of its business; that the alleged contract is not shown to have been made with or by an authorized agent of defendant; that in any event issues of fact were involved which the court could not decide and which should have been submitted to the jury.

The evidence introduced for plaintiff consisted mostly of that given by a witness named Pardee, who was its vice president and general manager, and correspondence between the parties. Pardee testified to having visited Detroit more than once in 1913 as a representative of plaintiff to try to interest the Caille Bros. Company in plaintiff's magnetos and get an order. He first identified a letter dated April 15, 1913, received from "The Caille Perfection Motor Co., per Brady Bradbeer," asking for plaintiff's catalogue and specifications for "the small type magneto for single cylinder," stating, "We are about to put on the market a small outboard or portable motor for rowboats and launches," and then identified a copy of a letter from himself dated April 22, 1913, replying to one from the Caille Perfection Motor Company, in which he mentions having called upon it in Detroit, stating he saw Mr. Howe and Mr. Liberty, but unfortunately did not see Mr. Bradbeer, discusses the subject at some length, apparently answering inquiries, and asked for certain particulars, stating in conclusion that

on receipt of the requested information "we shall be glad to send sample if your desire, and also will take up with you at the earliest possible date our new cheap type, which is possibly smaller and better fitted to your requirements." He then testified that about June 10th he again went to Detroit and called upon defendant, where he saw Mr. Liberty and Mr. Howe, the latter telling him that the Caille Bros. and Caille Perfection Motor Company were one and the same thing; that Mr. Howe was the purchasing agent, and witness knew this to be the case because he went to the office and asked for the purchasing agent and was referred to Mr. Howe's desk; that he asked Mr. Howe if they were not about ready to place an order for some magnetos and was told by him to see Mr. Liberty, the superintendent, which witness did, and, on returning to Mr. Howe, informed the latter that Liberty had reported favorably upon a sample which had been sent him, stating he thought it was a very good machine, and said, "We will need some very shortly, and you had better get ready 50 of the singles, or 50 magnetos for one-cylinder motors, and have them ready for shipment by July 15th, and I will give you shipping instructions before that time"; that he then wrote out the order as specified, asking for the rotation of the magneto, which meant the way it turned, and for the position of the time lever, getting the specific direction as to manufacture from Mr. Howe and Mr. Liberty; that it was necessary to do this "because of the difference in the motors that were designed by the different manufacturers we were forced to make magnetos to fit their conditions; we could not use any definite standard and had to make the magnetos to order to fit their specifications." Witness further testified that the measurement between different holes in the base for mounting, the height of the center of the shaft, whether they should be

"clockwise" or the reverse, the lever left or right, whether "ground stop" was to be used, and other special matters had to be known, and no order was started through the shop until the specifications for it were ascertained and given to their engineer from whose office it went to the shop with any penciled memoranda necessary; that plaintiff refused to take these magnetos back and did not offer to try and revamp them for some one else owing to this, because it might involve radical changes if a purchaser was found, "for example, from clockwise to anti-clockwise, or the lever left to lever right, whichever it was, reversing either of them or both of them, would have meant completely rebuilding the machine, except for actually machining parts."

A witness named Buck, who was a machinist and foreman of plaintiff at the time these magnetos were manufactured, testified that they were a special order, told the methods followed in filling it, manner of testing and inspecting the magnetos, and that he inspected them before they were packed and shipped.

Pardee testified also that when he took the order in Detroit he at the same time filled out an order blank embodying the essentials as they agreed upon them and mailed the same to their factory in Buffalo, following it himself a few days later; that the order was there entered and copies made of it, one being sent to defendant for verification according to custom. He produced and identified a copy of the order. It is sufficient to state that it is dated June 16, 1913, contains in somewhat disjunctive composition the names of the parties and their location, shipping directions, time of shipment (July 15th), price and terms, number of magnetos (50), with an apparently ample description of the kind and manner in which they should be made up according to his explanation of certain technical or trade names used. It is not signed by defend-

ant or any one in its behalf. To the copy sent defendant on receipt of the order was added: "The following is a copy of your order as entered. Advise immediately if not correct"—with a space for "acknowledgment." Work was begun on this order on June 16th. After his return to Buffalo Pardee wrote in plaintiff's name a letter to defendant, dated June 28th, in its material part as follows:

"We beg to acknowledge with thanks receipt of your verbal order, given to writer, for 50 single magnetos, and acknowledgment has been sent you under separate cover. This order was started through at once, so that we will be able to ship them July 15th, as specified by Mr. Howe, and we will appreciate your sending us confirming order right away, if you will: We will have the machines all ready for you on time."

Defendant did not acknowledge receipt of the copy of order sent it, or of the above letter, except as indicated by the following:

"July 2d, 1913.

"ERICSSON MFG. CO.,
"Buffalo, N. Y.

"*Gentlemen:* Kindly hold up until further notice the shipment of the single magnetos, a verbal order which you received from the writer. We find ourselves overstocked with Bosch magnetos at the present time and it will be impossible for us to use yours conveniently at the present time.

"Yours very truly,
"THE CAILLE BROS. CO.,
"Per L. H. HOWE."

At the time this letter was received the magnetos were yet under manufacture, but the order was timely completed and packed in wooden boxes by plaintiff, awaiting defendant's order for shipment for a time, after which several letters were written defendant relative to shipping them which were not directly answered until December, although defendant wrote relative to 2-cylinder magnetos of a different description.

On December 30th plaintiff shipped the goods to defendant, at the same time sending a letter stating it had carried the 50 magnetos at defendant's request for several months, and felt that it could not in reason be asked to do so longer. On December 31st defendant wrote plaintiff:

"December 31, 1913.

"ERICSSON MANUFACTURING COMPANY,
    "Buffalo, N. Y.
    "*Gentlemen:* Replying to your letter of the 30th, beg to state that under no circumstances must you ship the magnetos ordered last July. We find that we do not use this type magneto any more, and as there was nothing special made to our order, there is nothing to hinder us from canceling the order. We kindly ask you, therefore, to cancel our order, with the assurance that we will take magnetos from you within the coming year.

"Yours very truly,
                    "CAILLE BROS. CO."

On January 5, 1914, plaintiff replied, stating in part the "magnetos ordered by you last July really were special and made for your order," offering to give an April 1st dating and insisting on defendant accepting them. On January 20, 1914, defendant answered acknowledging receipt of the consignment, claiming the magnetos were unsatisfactory, had been ordered subject to 30 days' trial, complained that they "are for one cylinder only, and we could not use 50 in a year," stated "we kindly ask you to accept them back," and wrote plaintiff three days later that they had been shipped back as "unsatisfactory." Plaintiff refused to receive them, and considerable correspondence followed, in which, admitting an oral order, defendant made various and not altogether consistent claims in regard to it which, if sustained by any proof on the trial, would have raised issues of fact, but nowhere deny the authority of Howe as purchasing agent to give the order, although his name is more than once

mentioned in the correspondence. In one letter the writer states:

"In some way your representative induced Mr. Howe and Mr. Liberty to place an order with him for some magnetos. As I understand it, the order was given verbally for 50 two-cylinder, but in writing up the order they specified single cylinder."

In another letter the main defense now made is foreshadowed as follows:

"You received no confirming order for the 50 magnetos in the first place and you know yourself that it is a bad business policy to ship magnetos or anything else unless you have a written order for them."

Whatever might otherwise be urged as to the sufficiency of Pardee's testimony as to Howe's authority, defendant's repeated admissions of an oral contract in subsequent correspondence deprives that question of materiality, even if any reasonable doubt could arise as to the fact.

At the close of the testimony both parties claimed they were entitled to a directed verdict. Plaintiff on the ground that, in the absence of any testimony by the defendant, its liability was established by the undisputed evidence, and defendant on the sole ground, aside from Howe's authority, that the contract sought to be enforced was not in writing and void under the statute of frauds. No suggestion is shown to have been made to the court that under any contingency an issue of the fact for the jury was involved.

Under the condition of this record we discover no debatable issue beyond the question of whether the undisputed facts bring the admitted oral contract within the statute of frauds. It is undisputed that a memorandum in writing was made of the contract when the order was taken, and later a copy sent defendant from Buffalo by plaintiff with request to acknowledge and advise if not correct. It is admitted that the

memoranaum in writing, or order, was not signed by defendant nor receipt of the copy acknowledged.

Defendant contends the statute applies because no memorandum of the contract in writing is signed by the party sought to be charged, and it was for articles of merchandise which the producer usually made and had for sale to the public in the customary course of trade.

Plaintiff urges that the statute of frauds does not apply, because the contract was, in effect, for work and labor to be done, an agreement to construct a particular article for another in a particular way, according to his special needs and instructions; that the agreement is not a Michigan, but a New York, contract, consummated in Buffalo, where the order was accepted and the commodity bargained for was to be manufactured, and, in the absence of any proof of the laws of that State to the contrary, the contract is presumed to have become valid when the order was accepted and approved, citing *Kling* v. *Fries*, 33 Mich. 275, and *Sullivan* v. *Sullivan*, 70 Mich. 583 (38 N. W. 472).

Plaintiff's contention that this was a New York contract calls for scant consideration, and may be relegated with defendant's claim that Howe had no authority to contract. Pardee was plaintiff's vice president and general manager. His testimony shows an oral order was given by defendant's purchasing agent to him in Detroit and there agreed upon between them. In the absence of testimony to the contrary, the presumption would be as strong that the vice president and general manager had authority to contract for and accept an order as that the purchasing agent had authority to purchase.

Defendant's contention that this was a contract for sale of an article of general merchandise, and not for work and labor, is based chiefly on it appearing that

the type of magnetos as designated in the order by Pardee was M-11; that plaintiff's catalogue refers to such a type which he testified was a general design, single-cylinder magneto manufactured by plaintiff, and that, if M-11 was ordered specifying the location of the timing lever and whether clockwise or anti-clockwise, it would tell them all they wanted for making a magneto of that type except the ground. He had, however, explained in that connection that M-11 was one of five different general types plaintiff manufactured, and in explaining its mechanism said, amongst other things:

"With this lever on the left, or the right—in other words, with only those two features or specifications —there are possibly at least four different combinations of that same machine that would still be called 'M-11,' if it had certain mounting dimensions and one cylinder. The fact that it is called 'M-11' does not necessarily mean that all are the same. That tells the story of our general dimensions that we wanted to know. It was for our own particular purpose."

We find nothing in the record to negative plaintiff's positive testimony that this was a special contract for articles not then existing in the state in which they were to be delivered; that they were to be made by the seller in a particular manner under agreed specifications for particular features to meet the buyer's wants, were not such as could or would be made for a general trade nor suitable for all, or most, who might wish to buy or traffic in the articles, and that by the provisions of the agreement the price for the completed articles blends together compensation for material, work, labor, and skill so that they are not discriminated.

It is a well-settled general rule of law that such contracts are without the statute of frauds. 3 Parsons on Contracts (9th Ed.), p. 60.

This vexed question was exhaustively discussed and

many authorities reviewed by Justice STONE in *Re Gies' Estate,* 160 Mich. 502 (125 N. W. 420, 30 L. R. A. [N. S.] 318, 19 Am. & Eng. Ann. Cas. 1288), where the rule adopted by the Massachusetts courts is stated with approval as follows:

"An agreement by one to construct an article especially for or according to the plans of another, whether at an agreed price or not, although the transaction is to result in a sale of the article, is a contract for work and labor, and not within the statute; but, if the article to be made and delivered is of a kind which the producer usually has for sale in the course of his business, it is a contract for sale and must be in writing."

Plaintiff's testimony is positive that the articles contracted for, while of a general character coming within its line of manufacture, were not, in details, of a kind which it regularly made up and usually had for sale in the common course of business, but were made specially for and according to specifications of defendant.

Defendant introduced no testimony to meet or modify the case made by plaintiff, whose direct and positive proof as to the nature of this contract was undisputed by any conflicting evidence raising an issue of fact. It became the duty of the court to apply the law to the undisputed facts as proven. As the record stands, a strong *prima facie* case for plaintiff was presented by the established facts, and the trial court could not do otherwise than so instruct the jury.

The judgment is therefore affirmed.

KUHN, C. J., and STONE, OSTRANDER, BIRD, MOORE, BROOKE, and FELLOWS, JJ., concurred.