LEGGETT & MEYER TOBACCO COMPANY, Appellant, v. COLLIER, ROBERTSON & HAMBLETON *et al.*, Appellees.

1. **Chattel Mortgage:** DEFECTIVE ACKNOWLEDGMENT: POSSESSION OF MORTGAGEE: NOTICE. A chattel mortgage which is defectively acknowledged is not for that reason invalid as to third parties, where the mortgagee is in actual possession of the property.

2. **Practice:** INSTRUCTION: DIRECTING VERDICT: NEED NOT BE IN WRITING. An instruction to the jury in a cause to return a verdict as directed, need not be in writing; such direction not being an instruction within the meaning of sections 2784 to 2789 of the Code.

3. **Sales:** DELIVERY: ORDER OF VENDEE SUBSEQUENTLY COUNTERMANDED. Where, after an order for goods is accepted and acted upon by the vendor, by delivering the same to a railroad company for carriage, the vendee countermanded the order, but the countermand was not consented to by the vendor, and the goods were afterwards received by the vendee, and subsequently mortgaged by him as his own property, *held*, that the title to the goods passed to the vendee upon delivery to the carrier, and became complete, as against any right of the vendor to recall the same, upon the acceptance thereof by the vendee, and that the vendor could not thereafter recover possession of the same as against the mortgagee under said mortgage.

*Appeal from Lee District Court.*—HON. J. M. CASEY, Judge.

MONDAY, OCTOBER 9, 1893.

ACTION of replevin. There was a verdict and judgment for defendants, and the plaintiff appeals.— *Affirmed.*

*Craig, McCrary & Craig,* for appellant.

*F. T. Hughes* and *James C. Davis,* for appellees.

KINNE, J.—The plaintiff, a corporation, was a manufacturer of tobacco in St. Louis, Missouri. The defendants Collier, Robertson & Hambleton were a firm of

wholesale grocers, residing and doing business in the
city of Keokuk, Iowa. At and prior to December,
1890, said firm had placed a standing order with the
plaintiff for shipment of thirty-five boxes of "Star"
tobacco on every Monday morning. A shipment was
made to said firm in accordance with said order on
Monday, December 8, 1890. On said day, and after
the shipment had been made, the plaintiff received the
following letter from said firm, dated the sixth of
December, 1890: "Gents: Please omit our shipment of
this week on Star tobacco, and follow next week as
usual, and oblige yours, etc., Collier, Robertson &
Hambleton." · The plaintiff at once wrote to said
firm that the tobacco had been shipped before the
receipt of their letter, and said they would omit the
next week's shipment. No reply was received to this
letter. The tobacco arrived in Keokuk on December
9, 1890, and was delivered to said firm at their store.
On December 10, 1890, the defendant firm executed to
the defendant Smith, trustee, two chattel mortgages on
all property of the firm, to secure certain creditors in
the aggregate sum of about eighty-three thousand dol-
lars. The trustee on the same day took possession of
all the property covered by the mortgages, including
the tobacco in controversy. Thereafter the plaintiff
began this action, and replevied said tobacco. Under
the direction of the court, the jury returned a verdict
for the defendant Smith, trustee.

I. It is insisted that the mortgages under which the
defendant trustee holds the goods are void, because the
1. CHATTEL mort- acknowledgments thereto are defective.
gage: defect-
ive acknowl- The acknowledgment to the first mort-
edgment: pos-
session of gage recites that on December 10, 1890,
mortgagee:
notice. before the notary, "personally appeared
Collier, Robinson & Hambleton, by Hugh Robertson,
of said firm, personally known to me to be the identi-
cal person who signed the name of the said firm to the

above mortgage as mortgagors, and to be a member of said firm, and acknowledged the execution thereof to be the voluntary act and deed of said firm, for the uses and purposes therein expressed; and also on the same day the other members of said firm acknowledged the execution of said instrument to be the voluntary act and deed of said firm." The acknowledgment of the second mortgage recites that before the notary "personally appeared Collier, Robinson & Hambleton, by each one of said firm, and who are personally known to me to be the identical persons who signed the mortgage, and to be a member of said firm, and one of whom signed the name of said firm to the above mortgage as mortgagors, and acknowledged the execution thereof to be the voluntary act and deed of said firm, for the uses and purposes therein expressed."

For the purposes of this action it is not material whether the acknowledgments were defective or not, since the instruments were the act of the partnership, and, as between the parties thereto, were valid without any acknowledgment, and inasmuch as it appears without dispute that the mortgagee, trustee, took actual possession of all the property covered by said instruments several days prior to the commencement of the plaintiff's action. The effect of an acknowledgment would be to entitle the mortgages to be filed for record and recorded, when they would be notice to the world. The same purpose is accomplished if the mortgagee actually takes possession of the property. There can be no better notice to a claimant of property which is chattel mortgaged than the fact that the mortgagee is in possession of it. "If a mortgagee takes possession of the mortgaged chattels before any other right or lien attaches, his title under the mortgage is good against everybody if it was previously valid between the parties, although it be not acknowledged or recorded, or the record be ineffectual by reason of any

irregularity. The subsequent delivery cures all such defects, and it also cures any defect there may be through an insufficient description of the property. The taking possession is an identification and appropriation of the specific property in the mortgage." Jones on Chattel Mortgages, section 178; Cobbey on Chattel Mortgages, section 626; *Fromme v. Jones*, 13 Iowa, 474; *Gaar v. Hurd*, 92 Ill. 326.

II. After the introduction of the testimony, the court orally directed the jury to return a verdict for the defendant. Exceptions were taken because the direction was not in writing. Such a direction is in no sense an instruction, such as is contemplated by Code, sections 2784–2789, inclusive. *Stone v. C. & N. W. R'y Co.*, 47 Iowa, 82; *Milne v. Walker*, 59 Iowa, 186; *Young v. Burlington Wire Mattress Co.*, 79 Iowa, 419.

*2. PRACTICE: directing verdict: need not be in writing.*

III. The main question involved in this case is, in whom was the title or right of possession to the tobacco when the writ in this action was served? If by reason of the acts of the parties the title to the tobacco passed to defendant firm, then the trustee was the rightful holder of it when this action was commenced, and the court below properly directed a verdict for him. The order for the tobacco having been accepted, and acted upon by the plaintiff, by delivering the goods to the railway company for carriage to the defendant firm, it was not within the power of said firm to successfully countermand it by any notice, no matter when mailed, which did not reach the seller prior to the delivery of the goods to the carrier. Such delivery, prior to the countermand of the order, vested in the defendant firm the title to the goods, subject to the exercise of the right of stoppage in transit by the seller. So long as the order had not been accepted by a delivery of the goods to the carrier, it might be countermanded; not so,

*3. SALES: delivery: order of vendee subsequently countermanded.*

however, after the act of acceptance was complete. In the case at bar there was no undertaking by the vendor to deliver the goods at the place of business of the defendant firm, nor did the vendee designate a special carrier by whom the delivery should be made. In the absence of such designation and undertaking, the rule is that a delivery to the common carrier, in the usual and ordinary course of business, transfers title and possession of the property to the vendee, subject, as we have said, to the exercise by the vendor of the right of stoppage in transit. *Garretson v. Selby*, 37 Iowa, 529, 531; *Alsberg v. Latta*, 30 Iowa, 442, 445; *Whitlock v. Workman*, 15 Iowa, 351, 354; Benjamin on Sales [Bennett's Ed. 1892], section 181; 21 Am. & Eng. Encyclopedia of Law, pp. 497–499, 529; *Sarbecker v. State*, 26 N. W. Rep. (Wis.), 542; *Falvey v. Richmond*, 13 S. E. Rep. (Ga.), 261; *McLaughlin v. Marston*, 47 N. W. Rep. (Wis.), 1058; *Bacharach v. Chester Freight Line*, 19 Atl. Rep. (Pa. Sup.), 409; *Kessler v. State*, 44 N. W. Rep. (Minn.), 794. *Sullivan v. Sullivan*, 70 Mich. 583, 38 N. W. Rep. 472, was a case where the plaintiff, a manufacturer of liquors at Frankfort, Kentucky, and having a wholesale house at Cincinnati, Ohio, took an order orally while in Michigan for two barrels of whiskey. He sent the order to his distillery at Frankfort, and it was shipped from there to Ryan & McCarney, at Detroit, Michigan. The whiskey was shipped February 19, 1887. February 26, 1887, the firm telegraphed the plaintiff: "Cancel order. Will explain by mail." The plaintiff responded: "Goods were shipped the twenty-first. Receive, and wait further advice." No other communication passed between the parties till the goods were disposed of. The whiskey arrive in Detroit in due time. The consignees paid the freight, and placed the whiskey with their stock. March 9 the defendant, who held an account against the consignees for two hundred and fifteen dol-

lars, purchased the whiskey for two hundred and twenty dollars, receipting his account and paying five dollars in addition, and took the whiskey. He purchased in good faith, and without notice that there was any claim against the property. After the sale, one of the consignees caused a telegram to be sent the plaintiff that consignees had failed. The plaintiff sued in trover for the conversion of the whiskey. It was held that the sale was completed; that a "verbal order, followed by delivery and acceptance, is enough, under the statute of frauds, to complete the sale."

In the case at bar the attempted countermand of the order was a recognition of the existence of the order to ship. The testimony shows that the goods were in fact received at the store of the defendant firm, and treated the same as other goods. There was no act of the firm, after they must have known that the goods had in fact been shipped prior to the receipt of their letters, which tended to show that they did not consider and treat the tobacco as their property. Again, there is nothing to show that prior to the time the plaintiff became aware that the defendant firm had failed it made any claim to the goods. It did not recognize the countermand of the order as in any way binding.

It is said that there was no acceptance of the goods, and hence the case is within the statute of frauds. Under our statute, the delivery of goods under a contract of sale, to a common carrier in the usual course of transportation, is sufficient to take the case out of the statute. Code, sections 3663, 3664. In this respect our statute seems to be different from that of New York, where both delivery and acceptance are required. We think, however, that the evidence shows an acceptance of the tobacco. When the tobacco came to the store, the shipping clerk of the firm was aware of the fact, and knew that the order for it had

been countermanded. The firm, with knowledge that the tobacco had been delivered to it, took no steps to return the same, but the next day exercised an unequivocal act of ownership over it by mortgaging it to the defendant trustee. If the defendant firm did not consider it their property, if they had not accepted it, why did they mortgage it? They thereby undertook to make a disposition of it absolutely inconsistent with any claim that they had not accepted the property. Thus we see that both the plaintiff and the defendant firm treated the transaction as a sale and delivery of the tobacco.

Under our view, we need not consider the error based on the refusal of the lower court to give instructions asked by the plaintiff. They were properly refused. It can not be doubted that, the tobacco having been shipped in pursuance of an order before that time made, and having been received, accepted and retained by the defendant firm, said firm are liable to the plaintiffs for its value, notwithstanding the attempted countermand of the order, which was never recognized by the plaintiff. It is apparent, then, that when the writ was served in this action the plaintiffs had no right or title to or interest in the tobacco. The court below properly directed a verdict for the defendant Smith. AFFIRMED.