county of Richmond, and the notice on that day posted limited the time to apply for a writ of certiorari to fifteen days from the time when such public notice was first given. It follows that, the time prescribed by law having expired before application was made for this writ of certiorari, the motion to vacate said writ must be granted for this reason, without considering the objections made to the sufficiency of the petition upon which the writ was based.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Edward B. Hill, for appellant.
William J. Carr, for respondents.

PER CURIAM. Order affirmed, with $10 costs and disbursements, on the opinion of WARD, J., at special term.

---

(38 App. Div. 344.)

BENECKE et al. v. HAEBLER et al.

(Supreme Court, Appellate Division, First Department. March 24, 1899.)

1. GUARANTY—WHAT CONSTITUTES—LETTERS OF CREDIT.
    Plaintiffs were requested by prospective consignees to issue a letter of credit to the shipper, by the terms of which they obligated themselves to pay drafts not exceeding a certain amount when drawn by the shipper in payment for the goods, accompanied by bills of lading and original invoice. Held, that plaintiffs were not mere guarantors of the drafts.

2. BANKS AND BANKING—LETTERS OF CREDIT—DRAFTS—ACCEPTANCE.
    Neither the request to plaintiffs nor the letter of credit defined the quality of goods to be shipped. The shipper attached a bill of lading and original invoice to a draft, which was accepted by plaintiffs. The consignees received the bill of lading and original invoice from plaintiffs, and issued to them a letter of lien, wherein they agreed to hold the merchandise or its proceeds as the property of plaintiffs until they were repaid the amount of the acceptance. The consignees thereafter refused to accept the goods because the quality was inferior. Plaintiffs thereafter paid the draft, and took possession of the goods under their letter of lien, and caused the same to be sold after notice to the consignees; failing to realize as much as they had paid out on the draft. Held, that plaintiffs were under no obligation to examine the merchandise before accepting the draft, and hence they might recover the deficiency from the consignees.

3. CONTRACTS—BREACH—ACCRUAL OF CAUSE OF ACTION.
    A statement made by one who is liable to pay a debt at a future day to the creditor that he will not pay the debt when it becomes due is not such a breach of contract as will support an action before the debt becomes due.

4. PLEDGE—SALES—LIABILITY OF PLEDGEE.
    One who holds merchandise as collateral may determine when it shall be sold, and he is not liable for a depreciation in its market value occurring while it is in his hands.

Appeal from judgment on report of referee.

Action by Charles Victor Benecke and another against Theodore Haebler and another. From a judgment in favor of plaintiffs entered on the report of a referee, defendants appeal. Affirmed.

The following is the opinion of the court below (ODELL, Referee):

On the 21st of February, 1893, Anton Strauss, at Budapest, drew a draft for £813. 7s. 8d. on the plaintiffs, who were bankers doing business in London, as Benecke, Souchay & Co. It was accepted by the drawees, and paid by them at maturity on the 24th of May. Accompanying the draft was a bill of lading and certified invoice for 1,000 bags of beans shipped from Fiume by the steamship City, and deliverable to the order of Strauss in the city of New York. The bill was indorsed by Strauss in blank. The beans arrived in New York in due course, and were rejected by the defendants, to whom they had been sold by Strauss, on the ground of their alleged inferior quality. They were subsequently sold at public auction by the plaintiffs, after proper demand upon, and notice to, the defendants, and failed to realize the amount of the draft by the sum of $1,036.05. This action is brought to recover that deficiency. The contract for the purchase and sale of "1,000 bags 1892 crop, white medium beans, free from colored, as per sample," was made between the defendants and Strauss (acting by the Western Agency, Limited) on the 27th of January, 1893. On the same day the defendants made the following application to the plaintiffs: "Please issue a letter of credit for account of ourselves, in favor of Anton Strauss, of Budapest, for any sums not exceeding about eight hundred twenty-five pounds Stlg. Drafts to be drawn at three months' date from date of bill of lading against shipment by steamer or steamers to New York, direct or otherwise, for invoice cost of 1,000 bags beans. Bills to be accompanied by full set, in due course, of blank indorsed bills of lading to order, and original invoice certified by the U. S. consulate." In pursuance of this request, the plaintiffs issued a letter of credit in favor of Strauss, and he availed himself thereof, upon shipment of the beans, by drawing the draft with blank indorsed bill of lading and certified invoice attached, to which reference has been made.

I can find nothing in the case to support the claim that it was the understanding or intention that the plaintiffs, in granting the letter of credit, should stand merely as guarantors of bills drawn by Strauss on the defendants. The letter of credit is not in evidence. Presumably its terms conform to the defendants' letter of request, which, as I understand it, was for a credit in favor of Strauss, under which he might draw upon the plaintiffs at three months from date of bill of lading for invoice cost of beans shipped by steamer to New York. The details stated in the letter of request—that is, the due dates of the drafts, the documents to accompany the drafts, the goods to be shipped, the mode and the date of shipment, the date when the credit should expire—were evidently to guide the plaintiffs in determining whether drafts drawn by Strauss should be accepted by them for the defendants' account. That the plaintiffs' acceptance was authorized and in accordance with the defendants' understanding seems to be put beyond dispute by a paper executed by the defendants on the 15th of March. The beans had then arrived in New York, and the defendants executed and delivered what is called a "letter of lien," in which they acknowledged the receipt from the plaintiffs of the invoice and bill of lading for the 1,000 bags of beans shipped by Strauss and consigned to the plaintiffs, "as per their letter of credit B, No. 501," for £825, dated February 9, 1893, and which states as follows: "And the said shipper having drawn upon Messrs. Benecke, Souchay & Co. for £813. 7s. 8d. on the said invoice, we agree to hold the above-mentioned goods, or the proceeds thereof, as the property of Messrs. Benecke, Souchay & Co., until we have covered the amount drawn for by proper remittances." This, it seems to me, was a plain approval by the defendants of the plaintiffs' acceptance of the draft drawn by Strauss, and a plain admission that both draft and acceptance were regular and in accordance with the terms of the defendants' letter of request. It is admitted that the acceptance was paid by the plaintiffs at its maturity. These facts constitute a good cause of action against the defendants. I cannot see that the fact that the beans sent forward by Strauss were inferior in quality to those contracted for at all affects the question of the defendants' liability for moneys paid by the plaintiffs in discharge of an obligation assumed by them at the defendants' request. The kind or quality of the beans to be shipped by Strauss was not defined in the defendants' letter asking for a credit, and no duty devolved upon the plaintiffs to ascertain, be-

fore accepting, whether the goods shipped corresponded in quality with the goods ordered.

A second defense is that the plaintiffs negligently and unduly delayed the sale of the beans after the defendants gave notice of their rejection, thereby causing the loss for which they now seek to recover. The facts are as follows: The beans arrived at New York about the 15th of March, and on that day the bill of lading and invoice were delivered to the defendants, who entered the beans in the custom house, and, after inspecting them, informed Weber "that we would not take the beans until we made him some proposition on them." On the 14th of April the defendants gave Weber written notice that "we positively refuse to receive these beans, and will not honor the draft when due," and inclosed an order on the delivery clerk of the steamer City directing the delivery of the beans to Weber. This order was returned by Weber to the defendants on the following day. Thereupon the defendants wrote the Western Agency that the beans "are at the disposal of Mr. Anton Strauss, the Western Agency, Limited, and Messrs. Benecke, Souchay & Co., and we advise you to take care of them." The acceptance was paid by the plaintiffs on the 24th of May. On the 7th of June, Weber, for the plaintiffs, demanded of defendants the immediate delivery of the beans, in response to which the defendants returned the delivery order. On the 27th of June, "after proper demand and notice" (as it is stipulated), the beans were sold at public auction, producing the net sum of $2,979.80. The undisputed testimony of the defendant Haebler is that there was a considerable decline in the value of beans in the New York market during May and June, 1893, but the extent of the decline does not satisfactorily appear. Haebler's opinion is that in the month of April the beans in question were worth the amount of the Strauss draft.

The plaintiffs insist, first, that they were not at liberty to sell the beans until after the payment of their acceptance, because until then they had no cause of action against the defendants. In this they are, I think, correct. No cause of action arose against the defendants by their notice on April 14th that they would not pay the draft. In Burtis v. Thompson, 42 N. Y. 250, it was held that an action for the breach of a promise to marry will lie at once upon a positive refusal to perform, although the time specified for the performance has not arrived. The court said: "The defendant's counsel insists that, if this is the law to be applied in the present case, it will follow that the maker of a note due at a future day will make himself liable to an action instantly by declaring to the holder that he will never pay it. This conclusion does not at all follow. In the case of such a note the holder is in no respect damnified until payment is withheld after it is due. Until this happens, no legal right of his has been violated by the maker."

The plaintiffs further insist that they were not bound to use any greater diligence than they did use in making sale of the beans. I think that they are right in this also. They were at liberty, without a sale, to enforce the liability of the defendants for the full amount of the acceptance. A creditor, unless he has agreed to do so, is never bound to realize upon collateral which he holds before proceeding against the debtor to recover the debt. De Cordova v. Barnum, 130 N. Y. 617, 29 N. E. 1099; People v. E. Remington & Sons, 121 N. Y. 328, 24 N. E. 793. If he chooses to reduce the amount of the debt before suit by a sale of the collateral, it is for him to determine when the sale shall be made; reasonable notice being given to the debtor. The rule that governs as between a vendor and a vendee who refuses to accept goods bought by him is not applicable to such a case.

Plaintiffs are entitled to judgment for the amount claimed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Robert B. Honeyman, for appellants.

Thomas B. Hewitt and B. B. Blydenburgh, for respondents.

PER CURIAM. Judgment affirmed, with costs, on opinion of referee.