DETROIT VAPOR STOVE CO. v. FARMERS' CASH UNION.

No. 3912. Decided June 22, 1923. Rehearing Denied July 16, 1923.
(216 Pac. 1075.)

1. CORPORATIONS—SALES—CORPORATION HELD TO HAVE RATIFIED PURCHASE BY LOCAL MANAGER AND ACCEPTED GOODS. Under Comp. Laws 1917, § 5157, as to acceptance by buyer of goods, purchase of stoves ordered by defendant's local manager was ratified, and the stoves accepted, where defendant advertised and conducted a sale, selling some of the stoves so ordered, executed a trade acceptance for them, made partial payment, and recognized its obligation by letter.

2. CORPORATIONS—COMPANY HELD TO HAVE HAD KNOWLEDGE OF A PURCHASE BY ITS AGENT. Where it is undisputed that, about six weeks after the manager of a company's branch store bought oil stoves, its general manager wrote the seller, advising its salesman not to receive any more orders without confirma-

tion from its main office, through which all bills are paid, from which a remittance for stoves had theretofore been made, and from which, also, the bill for freight and a bill for advertising the stoves sold was paid, it must be held to have been aware of the purchase.

3. SALES—BREACH OF CONTRACT BY SELLER IN FAILURE TO FURNISH DEMONSTRATOR TO AID IN RESALE WILL NOT DEFEAT RIGHT TO RECOVER PURCHASE PRICE. Failure of seller of oil stoves to furnish a demonstration to aid in their sale as agreed by seller will not defeat seller's right to recover the purchase price, though the buyer may counterclaim for damages from the seller's failure to perform its agreement; the agreement being an independent one.[1]

Appeal from District Court, First District, Box Elder County; *M. C. Harris*, Judge.

Action by the Detroit Vapor Stove Company against the Farmers' Cash Union. Judgment for defendant, and plaintiff appeals.

REVERSED and REMANDED, with directions.

*J. E. Evans,* and *C. R. Hollingsworth,* both of Ogden, for appellant.

*Le Roy B. Young,* of Brigham City, for respondent.

GIDEON, J.

After the introductory allegations the complaint in this case states:

"That between on or about March 15, 1920, and August 19, 1920, the defendant became and was indebted to the plaintiff in the sum of $1,351.17 on an account for goods, wares, and merchandise sold and delivered during said time by the plaintiff to the defendant, and at its request in Box Elder county, Utah; that the defendant, in consideration of the sale and delivery to it of said goods, wares,

---

[1] *Detroit Vapor Stove Company* v. *J. C. Weeter Lumber Co.,* 61 Utah 503, 215 Pac. 995.

and merchandise at said times and place, promised to pay to the plaintiff said sum of $1,351.17, which was the reasonable value of said goods, wares, and merchandise; that on or about September 20, 1920, the defendant made and delivered to said plaintiff trade acceptance for $1,177.02, due and payable December 15, 1920, but that said trade acceptance was not paid when due, and has not since been paid in whole or part; that said sum of $1,351.17 has not been paid in whole or part, except that credit has been made thereon in the sum of $472.79, of which credit $300 was for cash paid by the defendant to the plaintiff."

Judgment for $914.07, with interest and costs, is prayed.

The answer consists of a general denial, and as and for a separate and additional defense alleges:

"That if any order was given, as alleged in plaintiff's complaint, for the purchase of said merchandise by any of defendant's agents at Brigham City, said agents had no authority to bind this defendant in the purchase thereof, which facts were well known to this plaintiff prior to the alleged sale of said merchandise, and this defendant, upon learning the facts, refused to be bound thereby, and refused to accept said goods."

For another and further defense the answer sets up:

"That at the time of giving the said alleged order for merchandise, as set out in plaintiff's complaint, plaintiff's agent represented to J. N. Hansen, by whom the order is alleged to have been given, that if he would give an order for the purchase of certain stoves the company would not be bound in any way to purchase the same, but that said stoves would be shipped to this defendant's store at Brigham City, and upon arrival the said agent of the plaintiff would promptly come to Brigham City and bring with him an experienced lady demonstrator, and that the two of them would put on a week's demonstration, and that during said demonstration they would sell all of the stoves so ordered, and that in the event any stoves were left unsold at the conclusion of said demonstration they would take back said stoves and ship them to Portland and that the defendant would be under no obligation to accept the same, and that said Hansen, relying upon said representation of plaintiff's agent, signed said order, believing at the time that said company would not be bound to purchase said stoves and he at said time informed plaintiff's agent that he had no authority to sign any orders for the purchase of goods, wares and merchandise. That upon the arrival of said stoves plaintiff's said agent failed to bring with him an experienced demonstrator and failed to put on a week's demonstration, but, on the contrary, spent a few hours in Brigham City, and then left and refused to assist in conducting the

same. That thereupon this defendant, upon first learning of the facts and the receipt of said stoves, tendered the same back to the plaintiff, but the plaintiff refused to accept the same, and advised this defendant that they would not accept said stoves, if they were returned. That thereupon this defendant proffered to handle said stoves on consignment, and to pay for the same as fast as they were able to sell them, but expressly denied that they were liable for the payment of said stoves, which proposition this plaintiff accepted, and this defendant alleges that as fast as any of said stoves were sold it has promptly remitted said money received from the sale thereof to this plaintiff, and this defendant expressly denies that it is indebted to the plaintiff in any sum whatever.

"Defendant further alleges that said stoves are unpacked and in the same condition in which they were received, and defendant hereby tenders back to plaintiff all of said stoves, and expressly refuses to be bound to pay for the same."

Defendant had judgment, and plaintiff appeals.

The court made findings to the effect that J. N. Hansen, the local manager of defendant's business at Brigham City, Utah, was without authority to bind the defendant in the purchase of the merchandise in question; also that the other allegations of the affirmative defenses are true, and that the material allegations of plaintiff's complaint are untrue. The assigned errors assail these findings and the judgment.

It appears that the defendant corporation operates two stores in Box Elder county, one at Brigham City and one at Tremonton. The general manager, Mr. Holmgren, is located at Tremonton. The store at Brigham City is referred to as a branch store. The testimony is to the effect that in September, 1919, plaintiff, through its representative, received an order from the Brigham City store for a number of stoves similar to the ones involved in this suit. Those stoves were received and the purchase price subsequently paid. On March 1, 1920, the same agent of plaintiff received from defendant, through its manager at Brigham City, an order for an additional number of stoves, being the stoves in question. The orders were in writing. They are not uncertain or indefinite as to terms. There is no allegation in the answer of fraudulent representations as to the nature or kind of stoves ordered, nor is there any complaint made concerning false representations as to the quality or price. There is a conflict

in the testimony as to what was said by the salesman at the time he received the order from the local manager at Brigham City. The witnesses for defendant testified that the salesman stated that the order was not to be binding until approved by the general manager at Tremonton, Utah. The salesman categorically denied any such statement. As we view the record, it is not necessary to determine the authority of the agent at Brigham City to bind the defendant. We are satisfied that the subsequent acts of the defendant ratified the purchase and accepted the goods.

The merchandise in question was shipped by the plaintiff from Detroit, Mich., on or about April 23, 1920. It was received at a later date at defendant's store at Brigham City, and in the month of July the defendant caused to be published in a local newspaper an advertisement offering these goods for sale, and named dates when a "big demonstration at our Brigham City store" would be had, making the "greatest offer ever made on famous red star Detroit vapor oil stoves." Admittedly sales were made from the stoves included in the March purchase. In the month of September, 1920, the defendant executed what is termed a "trade acceptance," payable December 15, 1920, for the purchase price of these goods. In December of that year the defendant remitted to plaintiff the sum of $300 on account. That the goods were held on consignment was not intimated until March 20, 1921. At that time the defendant wrote to the plaintiff in reply to a letter dated March 4, 1921, that:

"We are attempting to settle up for stoves that were sent to us, and we will pay for them as soon as sold and we are able to do so. If this is not satisfactory, you are at liberty to make other disposition of them."

There is nothing whatever to suggest that the plaintiff ever consented that the goods might be considered as held on consignment. Under the undisputed facts we are clearly of the opinion that, measured by the statute and the authorities, the defendant accepted the goods and treated them as its own. Comp. Laws Utah 1917, § 5157, being one of the sections of the Uniform Sales Act, provides:

"The buyer is deemed to have accepted the goods when he inti-mates to the seller that he has accepted them, or when the goods have been delivered to him, and he does any act in relation to them which is inconsistent with the ownership of the seller, or when, after the lapse of a reasonable time, he retains the goods without intimating to the seller that he has rejected them."

In Williston on Sales, § 483, it is said:

"The ways of manifesting acceptance may be reduced to the three enumerated in the section of the Sales Act under considera-tion, namely: (1) Intimation of acceptance. (2) Exercising acts of ownership. (3) Retaining the goods. Under the first head will be included both cases where the buyer receives goods and ex-presses his acceptance of them, and also cases where by the terms of the bargain the buyer agreed to accept goods, whether specified at the time of the bargain or to be afterward selected by the seller, without inspection. In the second class of cases it is impossible to enumerate all ways in which acts of ownership may be exercised by the buyer. The commonest case is where he resells the goods. As such action would be improper, except on the assumption that the buyer had acquired title, it indicates necessarily an assent on the part of the buyer to become the owner of the goods in question."

The fifth headnote to *Brown Bag Filling Mach. Co.* v. *United States S. & A. Co.*, 93 Conn. 670, 107 Atl. 619, is:

"Retention of possession, without any claim indicating that the buyer had any fault to find with the goods, *held* sufficient to justify instruction that retention under the circumstances amounted to an acceptance."

See, also, *Daniels* v. *Bordie*, 54 Ark. 216, 15 S. W. 467, 11 L. R. A. 81; *Lenz* v. *Blake-McFall Co.*, 44 Or. 569, 76 Pac. 356; *Turnbull* v. *Potlatch L. Co.* (Sup.) 181 N. Y. Supp. 56; *Ostman* v. *Lee*, 91 Conn. 731, 101 Atl. 23; 2 Mechem on Sales, § 1389.

The argument or contention that the defendant company was not aware of the purchase of these stoves is not supported by the admitted facts. In fact it is contrary to every reason-able probability. It is undisputed that on April 16, 1920, Holmgren, the general manager of the defendant at Tre-monton, wrote plaintiff, advising the plaintiff's sales-men to not receive any ''more orders'' without a con-firmation from the Tremonton office. It is in evidence that all bills are paid through the Tremonton office. The re-

mittance in December, 1920, was made from that office. Presumably the freight on the goods in question was paid from there, as was the bill for advertising.

There remains for consideration the further question that the plaintiff failed to furnish a demonstrator to be in attendance at the time the goods were put upon sale at the defendant's store in Brigham City. This particular question was considered by this court in the very recent case entitled *Detroit Vapor Stove Co.* v. *J. C. Weeter Lumber Co.,* 61 Utah 503, 215 Pac. 995. It was there determined that a breach of a promise or agreement on the part of the seller to furnish a demonstrator does not defeat the right of the plaintiff to recover for the goods sold, but saves to the defendant the right to offset by way of counterclaim for any damages which may have been sustained by reason of the failure of the plaintiff to perform that part of its agreement. In the present action no counterclaim was interposed. Neither is any claim made in the way of an offset. No allegation is found in the answer that by reason of the failure of the plaintiff to perform that part of its agreement defendant had suffered or sustained any damages. No proof was offered to show that any damages had been sustained. The allegation of the answer respecting the failure of the plaintiff to furnish a demonstrator was relied upon as a defense against plaintiff's right to recover any amount.

This is a law action. This court is reluctant in such cases to order or direct a verdict of the trial court. The defendant by its answer attempted to take advantage of the failure of plaintiff to furnish a demonstrator to assist in the sale of the merchandise, but by reason of the failure to allege any damages in that regard, either as an offset or in counterclaim, such allegation could be of no avail in the present state of the pleadings.

The judgment will be reversed, and the cause remanded, with directions to permit the parties, if they are so advised, to amend their pleadings and try the issue of loss or damage sustained by the defendant, if any, by reason of the failure of the plaintiff to furnish the demonstrator, if the court is of the

opinion that the plaintiff so contracted and failed to perform that part of its agreement.  Appellant to recover costs.

WEBER, C. J., and THURMAN and CHERRY, JJ., concur.

FRICK, J., not participating.