### E. E. HUBER & CO. *v.* LALLEY LIGHT CORPORATION.

1. BANKS AND BANKING—LETTER OF CREDIT—BREACH OF CONTRACT BETWEEN BUYER AND SELLER.

   A bank that issues a letter of credit is not affected by litigation between buyer and seller arising from a claimed breach of a contract by the seller, where the contract is not incorporated in the letter of credit.

2. SALES — BUYER MAY ACCEPT OR REJECT ANY OR ALL GOODS SHIPPED WHERE CONTRACT BREACHED—ACCEPTANCE.

   Where a buyer ordered only 10 lighting plants and was shipped 30, upon arrival at destination it might accept all, reject all, or accept the 10 it had ordered and reject the rest, but if it exercised acts of ownership or acts inconsistent with the seller's ownership, it may be held to have accepted all.

3. PLEDGES—CREDITOR NOT BOUND TO REALIZE UPON COLLATERAL.

   A creditor, unless he has agreed to do so, is never bound to realize upon collateral which he holds before proceeding against the debtor to recover the debt.

4. BANKS AND BANKING—BANK MAY SELL SECURITY BEFORE PROCEEDING AGAINST DEBTOR.

   Where a bank, with which credit had been established, paid for 30 lighting plants shipped to the buyer, 20 of which were rejected, it had a claim on them as security, and it might have sold them and applied the avails in reduction of the buyer's debt to it, but it was not bound to do so before proceeding against it.

5. SALES—REJECTED GOODS SHOULD BE FREED FROM CLAIMS BEFORE BUYER MAY MAINTAIN ACTION TO RECOVER MONEY PAID.

   Where a buyer ordered only 10 lighting plants, but 30 were shipped by the seller and paid for by the bank with which the buyer had established credit, on rejecting the 20, on which the bank had a claim as security, it was the buyer's duty, before bringing an action against the seller, to free the rejected plants from the bank's claim,

---

[1]Banks and Banking, 7 C. J. § 237; [2]Sales, 35 Cyc. p. 258; [3]Pledges, 31 Cyc. p. 868; [5]Sales, 35 Cyc. p. 608 (Anno).

since the buyer may not have judgment against the seller for the money paid and at the same time have the property held by the bank to secure its claim.

**6. SAME — BUYER REJECTING GOODS BUT RETAINING POSSESSION FOR MORE THAN SIX YEARS DEEMED TO HAVE ACCEPTED.**

Where a buyer rejected goods shipped to it in excess of its order, but retained possession of them for more than six years, it must be held to have accepted them.

Error to Wayne; Richter (Theodore J.), J. Submitted October 13, 1927. (Docket No. 119.) Decided April 3, 1928. Rehearing denied June 5, 1928.

Assumpsit by E. E. Huber & Company against the Lalley Light Corporation for breach of a contract of sale. Judgment for defendant. Plaintiff brings error. Affirmed.

*Dykema, Jones & Wheat,* for appellant.

*Campbell, Dewey, Stanton & Bushnell,* for appellee.

CLARK, J. In 1920, defendant, Lalley Light Corporation, a Delaware corporation, manufactured farm lighting plants in Detroit. Plaintiff, E. E. Huber & Company, a Salvador corporation, was then and is now foreign representative in Central America of certain American manufacturers, and then was defendant's exclusive distributor. In April, 1920, a new distributor's contract was made in Detroit by the parties, estimating plaintiff's requirements for the remainder of the year. The contract contemplates forwarding plants to plaintiff from Detroit on plaintiff's orders thereafter to be received. Mr. Huber, president of plaintiff company, before leaving United States, caused a credit to be established at the Commercial Bank of Spanish America, Limited (New York Agency), which bank on June 25, 1920, wrote defendant as follows:

---

⁶Sales, 35 Cyc. p. 259.

"LALLEY LIGHT CORPORATION,
"Detroit, Michigan.
"Attention Export Dept.

*"Dear Sirs:* We beg to advise you that in accordance with cable request from our Guatemala office, we have established a credit in your favor for the amount of about $5,000 to cover an order for 30 lighting plants on account of Mr. E. E. Huber.

"We are not yet advised as to where the goods are to be shipped but we presume they are intended for the Guatemala district. , You will please note that in any case they must be consigned to the order of this bank on the ocean shipping documents.    Payment will be made as usual against delivery of full set ocean shipping documents, certificate of insurance and commercial invoice.

"Yours very truly,
"COMMERCIAL BANK OF SPANISH
AMERICA, LTD.,
S. C. DOBSON, Agent."

Defendant replied, suggesting mistake, as the cost of 30 plants was nearly $11,000.    The matter had not been cleared up on July 22d when defendant cabled plaintiff as follows:

"Commercial Bank advises credit established covering order plants Guatemala.    Have not received order. Advise details."

On July 26, 1920, the bank again wrote defendant:

"LALLEY LIGHT CORPORATION,
"Detroit, Michigan.
"E. E. HUBER.

*"Dear Sirs:* Referring to our letters dated June 25th and July 17th respecting the credit established in your favor on account of above to cover thirty lighting plants, we have now received the expected letter from our Guatemala office.    From this letter it appears that a cash payment of $5,000 is required by you, the balance of the order to be paid within 120 days.

"Please note, therefore, that we have amended to cover cash payment of $5,000 against your delivery to us of the ocean shipping documents, and we will be responsible to you for the payment of balance of your

invoice 120 days from the date of our initial payment, interest to be added at the rate of 6% p. a.

"We await to hear from you that you are in accord with this arrangement, and remain,

"Yours very truly,

"COMMERCIAL BANK OF SPANISH
AMERICA, LTD.,
S. C. DOBSON, Agent."

This was later modified to provide for payment of full amount in cash on delivery of required documents. On July 28, 1920, defendant shipped 30 plants, f. o. b. Detroit, invoiced to plaintiff and consigned to the bank on bill of lading. The shipment cleared New York on August 27th. Defendant presented required shipping documents to the bank and was paid in full.

Mr. Huber, returning from United States, reached his office in San Salvador about July 23d, when he received defendant's cablegram of July 22d. He testified that he replied by letter, which defendant denies having received: On August 7th, plaintiff ordered by mail 10 plants from defendant. On September 3d, defendant cabled plaintiff:

"30 plants Puerto Barrios cleared Steamer Lake Flattery August 27th."

Plaintiff insists that from this cablegram it first learned that defendant intended to ship 30 plants and that the shipment had been made. The 30 plants reached Guatemala in due course. Plaintiff accepted 10 of them and demands of defendant refund of the value of 20, plus expense. Defendant refused. The 20 plants are in a warehouse in Guatemala and are held by the bank to secure plaintiff's indebtedness to it. The trial was without a jury. Upon findings, duly excepted to, defendant had judgment on April 5, 1926. Plaintiff brings error.

The bank that issued the letter of credit is not affected by this litigation between buyer and seller. It was not concerned with the provisions of the sales

contract not incorporated in the letter of credit.   It paid on the required documents as it had a right to do.   *Maurice O'Meara Co.* v. *National Park Bank,* 239 N. Y. 386 (146 N. E. 636, 39 A. L. R. 747) ; 30 A. L. R. 353, 1310, notes; and 22 Columbia Law Rev. 311.   Plaintiff concedes that the bank followed its instructions.

The theory of plaintiff's case as presented is that it ordered 10 plants and was shipped 30; that defendant upon advice of the letter of credit had no right to ship except upon plaintiff's order; and that there is no contract relation between the parties respecting the 20 plants; that plaintiff has not accepted but has rejected them; that defendant has its money; and that plaintiff is therefore entitled to recover.   Assuming that plaintiff ordered but 10 plants and was shipped 30 as it contends, upon arrival at destination it might accept all, reject all, or accept the 10 it had ordered and reject the rest.   Section 11875, 3 Comp. Laws 1915 (uniform sales act) ; 2 Commerce Clearing House, U. S., Unit. § 1699.   But if it exercised acts of ownership, or acts inconsistent with seller's ownership, it may be held to have accepted.   2 Williston on Sales (2d Ed.), § 483.

The claim of the bank on the goods is valid.   Neither party can question it.   It secured and still secures a debt of plaintiff.   The bank might have sold the rejected goods and applied the avails in reduction of plaintiff's debt to it.   It may be observed that the bank, in the trade sense, was plaintiff's bank.   It owed him the duty of service, and it is not unlikely that it would have sold the goods had it been requested to do so.   *Imbrie* v. *D. Nagase & Co.,* 196 N. Y. App. Div. 380 (187 N. Y. Supp. 692).   It is not suggested in the record that the bank agreed to do so.   It has not sold the plants or any of them.   Without resorting to the collateral it had, and it seems now has, the right to proceed against plaintiff to recover.

"A creditor, unless he has agreed to do so, is never bound to realize upon collateral which he holds before proceeding against the debtor to recover the debt." *Benecke* v. *Haebler*, 38 N. Y. App. Div. 344 (58 N. Y. Supp. 16).

It may be that plaintiff under the sales act had right of a lien on the rejected goods to secure the amount it has paid, unwittingly, as it contends.    But such right is wholly apart from its right to use the goods as security for its debt to another.    Conceding the amount of the bank's claim to be larger and to cover more goods than plaintiff intended, and that the situation has been produced by defendant's wrong, it is still the bank's security and the plaintiff's debt.    Defendant is not to be penalized by being deprived of both the money and the goods.    Plaintiff had right to be compensated in damages.    It seems clear that in rejecting the goods and to bring this action plaintiff within a reasonable time ought to have freed them from the hold of the bank.    And by a timely sale of the goods by the bank and credit of the avails on plaintiff's debt to it, the way for this suit might have been opened.    Counsel insist that this may work a hardship, but our attention is called to no rule which permits escape from it.    See American Commercial Credits, chap. 14, by Ward, Ronald Press, N. Y., relating to the mercantile risk and the buyer's dilemma, and see The Trust Receipt as Security, by Frederick (reprint Columbia Law Review) and Commercial Letters of Credit, by McCurdy (reprint Harvard Law Review).    Plaintiff may not have judgment against defendant for the money paid and at the same time have the property held by the bank to secure the debt. At the time of the trial the goods had been so held for more than six years.    We are constrained to agree with the trial court that plaintiff must be held to have accepted the goods.

In *Fillmore* v. *P. Garvan, Inc.*, 97 Conn. 207 (116

Atl. 184), it was held (quoting foot-note 2 Williston on Sales [2d Ed.], § 483) :

* * * "that where the buyer, on its rejection of the goods as defective, added the statement that it would hold the goods in its warehouse until the seller furnished other goods of contract quality, this attempt to hold a lien on the defective goods was a conditional rejection which had the effect of an acceptance, under (the sales act)."

In *Leggett & Meyer Tobacco Co.* v. *Collier,* 89 Iowa, 144 (56 N. W. 417), buyer mortgaged the goods and was held to have accepted them.   And so where the goods were loaned to another (*Hensen* v. *Beebe,* 111 Iowa, 534 [82 N. W. 942] ; 35 Cyc. p. 259).   See *Detroit Vapor Stove Co.* v. *Farmers' Cash Union,* 61 Utah, 567 (216 Pac. 1075) ; *Prager* v. *J. S. Scheff & Co.,* 180 N. Y. Supp. 119.

That plaintiff is not damaged until it is out of pocket, until it has paid the bank, is a question not necessary to decision.   That the result would be different if there had been no bargain and sale, if defendant had sent the goods and taken the money as a mere intermeddler, need not be considered.

Judgment affirmed.

FELLOWS, WIEST, MCDONALD, and SHARPE, JJ., concurred.

The late Chief Justice FLANNIGAN and the late Justices SNOW and BIRD took no part in this decision.