MAURICE O'MEARA COMPANY, Appellant, v. THE NATIONAL PARK BANK OF NEW YORK, Respondent.

Practice — summary judgment — when motion for such judgment under rule 113 of Civil Practice Act should be granted — insufficiency of affidavits opposing motion — banks and banking — irrevocable letter of credit — agreement of bank to pay sight drafts for goods upon presentation of documents specified in letter of credit — when bank cannot refuse payment because no evidence was submitted that goods were of quality mentioned in the documents — other defenses examined and held invalid.

1. After issue had been joined herein, plaintiff moved upon the pleadings and affidavits, pursuant to rule 113 of the Rules of ·Civil

Practice, to strike out the answer and for summary judgment. The answering affidavits merely repeat the various denials contained in the answer and these denials are insufficient to raise an issue upon a motion for summary judgment. Under the rule, facts must be presented, rather than mere general or specific denials, in order to defeat the motion. The facts in defendant's answer and in the affidavits in opposition to the motion are not a defense to the action and, hence, the motion should have been granted.

2. Defendant bank issued to plaintiff's assignor an irrevocable letter of credit in and by which the bank agreed to pay sight drafts to a certain amount on presentation of documents specified in the letter of credit. When drafts for goods shipped were presented with the documents required by and specified in the letter of credit, defendant refused to pay such drafts upon the ground that neither plaintiff nor its assignor had presented "evidence reasonably satisfactory" that the paper referred to in the documents accompanying the drafts was of the tensile strength specified in the letter of credit. Defendant had no right to insist that a test of the tensile strength of the paper should be made before paying the drafts, nor did it even have the right to inspect the paper before payment, to determine whether it in fact corresponded to the description contained in the documents. All that the letter of credit provided was that documents be presented which should describe the paper shipped as of a certain size, weight and tensile strength. This was done and the defendant should have paid the drafts.

3. It is contended that a dock delivery order, one of the documents specified in the letter of credit, was insufficient because it required that the paper be removed from the dock within four days after the date of the order. No objection was made on this ground by defendant at the time the documents were tendered and such objection, if valid, was thereby waived. Furthermore, if the time was insufficient, further time might have been obtained, and this claim was first referred to in a letter from defendant to a bank not a party to this action, which letter was not sent until after the time limit had expired.

4. It is contended that there was an oral agreement for a test. It is not alleged that the beneficiaries of the letter of credit were parties to the alleged modification of it. They did not assign the letter of credit to plaintiff until five months after the agreement of modification is alleged to have been made. The letter of credit could not have been modified in this way by parol. Since the defendant was already bound by its letter of credit to pay the drafts on presentation of the specified documents, without any inspection of the goods, there was no consideration for the alleged new promise, and the same, even if made, was invalid.

5. It is contended by defendant that plaintiff was not entitled to a summary judgment since there was an issue raised as to the amount of damages. This cannot be sustained. It appears from the affidavits in support of the motion that after defendant had refused to pay the drafts due notice was given to it by plaintiff of its intention to sell the paper for the best price possible, although no notice of such resale was necessary. No attention was paid to the notice and the paper was sold as soon thereafter as was practicable and for the best price obtainable which was the fair market price at the time. The plaintiff's damages, upon the non-payment of the drafts, were primarily the face amount of the drafts. Plaintiff was bound, however, to minimize such damages so far as it reasonably could. This it did, and for the amount received, less expenses of the resale, it was bound to give the defendant credit. Defendant did not allege in its affidavits that plaintiff did not act in good faith or with reasonable care and diligence. It merely claimed that plaintiff did not get the best price possible but gave no evidence of the market value of the paper at the time and plaintiff submitted affidavits of three dealers in paper that the paper was sold at the fair market value. Plaintiff's damages were, therefore, liquidated by the resale on notice.

*O'Meara Co.* v. *National Park Bank*, 209 App. Div. 501, reversed.

(Argued October 3, 1924; decided January 27, 1925.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered June 27, 1924, which affirmed an order of Special Term denying a motion by plaintiff for summary judgment.

The following question was certified: " Should the motion of the plaintiff for summary judgment herein have been granted? "

*Carl A. Mead* and *Philip W. Lowry* for appellant. The plaintiff's demand is liquidated. (*Kennedy* v. *County of Queens*, 47 App. Div. 250; *Mitchell* v. *Addison*, 20 Ga. 53; *Roberts* v. *Prior*, 20 Ga. 561; *Treat* v. *Price*, 47 Neb. 875, 883; *Benecke* v. *Haebler*, 38 App. Div. 344; 166 N. Y. 631; *Imbrie* v. *Nagase & Co.*, 196 App. Div. 380; *Doelger* v. *Battery Park Nat. Bank*, 201 App. Div. 515; *Arctic Ice, etc., Co.* v. *Southgate*, 287 Fed. Rep. 48, 51; *Second Nat. Bank* v. *Columbia Trust Co.*, 288

Fed. Rep. 17; *Urquhart, Lindsay & Co., Ltd., v. Eastern Bank, Ltd.,* L. R. [1922] 1 K. B. 318.) An actual defect in the quality of the goods, even if shown, would not be a defense to this action, as the letter of credit required the defendant to pay against delivery of documents, not against delivery of goods. (*Pordage v. Cole,* 1 Saund. 320; *Jones v. Barkley,* 2 Doug. 659; *Morris v. Sliter,* 1 Den. 59; *Meriden, etc., Co. v. Zingsen,* 48 N. Y. 247; *Kirtz v. Peck,* 113 N. Y. 222; *De Kay v. Bliss,* 120 N. Y. 91; *Raegener v. Hubbard,* 167 N. Y. 301; *Rosenthal Paper Co. v. National Folding Box, etc., Co.,* 226 N. Y. 313; *Jones v. Turner,* 80 Hun, 157; 149 N. Y. 611; *Gray v. Booth,* 64 App. Div. 231; *Clark v. West,* 137 App. Div. 23; *Gourd v. Healy,* 176 App. Div. 464.) The defendant had no right to test the goods. (*Lamborn v. L. S. B. & T. Co.,* 196 App. Div. 504; *Bank of Italy v. Merchants Nat. Bank,* 236 N. Y. 106; *Sawyer v. Dean,* 114 N. Y. 469; *Whitney v. McLean,* 4 App. Div. 449; *Plumb v. Hallauer & Sons Co.,* 145 App. Div. 20; *Brown v. Raritan Chemical Works,* 188 App. Div. 578; *Hyman v. Hullman,* 205 App. Div. 119; *Horst Co. v. Biddell Brothers,* [1912] App. Cas. 18; *Polenghi Bros. v. Dried Milk Co., Ltd.,* 10 Comm. Cas. 42, 47.) The documents tendered to the defendant were sufficient. (*Border Nat. Bank v. American Nat. Bank,* 282 Fed. Rep. 73; *Bank of America v. Whitney-Central Nat. Bank,* 291 Fed. Rep. 929.) The defendant was not entitled to evidence, not required by the letter of credit, as to the quality of the paper. (*Littlejohn v. Shaw,* 159 N. Y. 188; *Browne v. Paterson,* 165 N. Y. 460; *Collender v. Dinsmore,* 55 N. Y. 200; *Mittnacht v. Slevin,* 67 Hun, 315; 142 N. Y. 683; *Second Nat. Bank v. Columbia Trust Co.,* 288 Fed. Rep. 17, 25; *Giles v. Comstock,* 4 N. Y. 270; *Kinney v. McBride & Co.,* 88 App. Div. 92; *Leavitt v. de Vries,* 127 App. Div. 721; *Brown v. Raritan Chemical Works, Inc.,* 188 App. Div. 578; *Banco Nacional Ultramarino v. First Nat. Bank,* 289 Fed. Rep. 169.)

*Archibald R. Watson, John M. Harrington* and *Louis F. Doyle* for respondent. It was incumbent upon the plaintiff, as a condition precedent to the right to demand payment of any draft drawn under the letter of credit described in the complaint, to present to the defendant evidence reasonably satisfactory to it and documents meeting with its approval showing that the newsprint paper covered thereby was of the quality in respect of bursting strength specified in the letter of credit; and, plaintiff having failed to meet such condition precedent, the defendant was justified in declining to make payment of the drafts presented and is not liable therefor in damages to the plaintiff or any other person. (*Bank of Montreal* v. *Recknagel,* 109 N. Y. 482; *Portuguese Am. Bank* v. *Atlantic Nat. Bank,* 200 App. Div. 575; *Bank of Italy* v. *Merchants Nat. Bank,* 236 N. Y. 106; *Lamborn* v. *Lake Shore Banking & Trust Co.,* 196 App. Div. 504; 231 N. Y. 616; *International Banking Corporation* v. *Irving Nat. Bank,* 274 Fed. Rep. 122; 283 Fed. Rep. 102; *Nat. City Bank* v. *Seattle Nat. Bank,* 209 Pac. Rep. 705.) A dispute having arisen between the parties as to whether the documents presented did or did not meet the conditions of the letter of credit and a serious question having been presented concerning the quality of the newsprint described in the documents accompanying the first draft, the plaintiff and the defendant having thereupon made an agreement, based upon a valuable consideration, that each would abide by tests to be made by the Electrical Testing Laboratories, an impartial expert, and such test having shown that the samples of newsprint paper tested by such impartial expert were of a lower bursting strength than that required by the letter of credit, the defendant was, by that circumstance alone, absolved from the obligation, if any, to honor the draft. (*Lieberman* v. *Templar Motor Co.,* 236 N. Y. 139.) The circumstance that the newsprint referred to in the documents accompanying the drafts was in fact of a

more bursting strength than that required by the terms of the letter of credit is fatal to the plaintiff's recovery in this action. (*Old Colony Trust Co.* v. *Lawyers T. & T. Co.*, 297 Fed. Rep. 152; Williston on Sales, § 479; *Gourd* v. *Healy*, 176 App. Div. 464.) The facts pleaded in the fourth separate defense contained in defendant's answer and supported by defendant's answering affidavits raise an issue upon which the defendant is entitled to defend; for, inasmuch as it was the plaintiff's duty, in any view, to minimize the damages, and since the plaintiff willfully declined to accept the offer made to it by the Sun-Herald Corporation, after the alleged presentation of the three drafts, to pay the precise price recited in the letter of credit for all paper of the quality therein described, any resulting damage must be borne, not by the defendant, but by the plaintiff. (*Parsons* v. *Sutton*, 66 N. Y. 92; *Allen* v. *McConihe*, 124 N. Y. 342; *Brown* v. *Weir*, 95 App. Div. 78.) The present action is not one to recover a debt or liquidated damages arising on contract, within the meaning of rule 113. (*Poland Export Corporation* v. *Marcus*, 204 App. Div. 302; *De Kalb* v. *Siegel*, 70 N. Y. L. J. 76; *Jankowitz* v. *Manhattan S. E. Co.*, 196 App. Div. 22.)

McLAUGHLIN, J. This action was brought to recover damages alleged to have been sustained by the plaintiff's assignor, Ronconi & Millar, by defendant's refusal to pay three sight drafts against a confirmed irrevocable letter of credit. The letter of credit was in the following form:

" THE NATIONAL PARK BANK
" OF NEW YORK.
" Our Credit No. 14956                 *October* 28, 1920.
" MESSRS. RONCONI & MILLAR,
        " 49 Chambers Street,
                " New York City, N. Y.:
" DEAR SIRS.— In accordance with instructions received from the Sun-Herald Corporation of this City, we open a confirmed or irrevocable credit in your favor for account

of themselves, in amount of $224,853.30, covering the shipment of 1322 2/3 tons of newsprint paper in 72½″ and 36½″ rolls to test 11–12, 32 lbs. at 8½¢ per pound net weight — delivery to be made in December 1920 and January 1921.

" Drafts under this credit are to be drawn at sight on this Bank, and are to be accompanied by the following documents of a character which must meet with our approval:

" Commercial Invoice in triplicate

" Weight Returns

" Negotiable Dock Delivery Order actually carrying with it control of the goods.

" This is a confirmed or irrevocable credit, and will remain in force to and including February 15th, 1921, subject to the conditions mentioned herein.

" When drawing drafts under this credit, or referring to it please quote our number as above.

" Very truly yours,<br>" R. STUART,<br>"*Assistant Cashier.*<br>" (R. C.)"

The complaint alleged the issuance of the letter of credit; the tender of three drafts, the first on the 17th of December, 1920, for $46,301.71, the second on January 7, 1921, for $41,416.34, and the third on January 13, 1921, for $32,968.35. Accompanying the first draft were the following documents:

" 1. Commercial invoice of the said firm of Ronconi and Millar in triplicate, covering three hundred (300) thirty-six and one-half (36½) inch rolls of newsprint paper and three hundred (300) seventy-two and one-half (72½) inch rolls of newsprint paper, aggregating a net weight of Five Hundred and forty-four thousand seven hundred and twenty-six pounds (544,726), to test eleven (11), twelve (12), thirty-two (32) pounds.

" 2. Affidavit of Elwin Walker, verified December 16, 1920, to which were annexed samples of newsprint paper, which the said affidavit stated to be representative of the shipment covered by the accompanying invoices and to test twelve (12) points, thirty-two (32) pounds.

" 3. Full weight returns in triplicate.

" 4. Negotiable dock delivery order on the Swedish American Line, directing delivery to the order of the National Park Bank of three hundred (300) rolls of newsprint paper seventy-two and one-half (72½) inches long and three hundred (300) half rolls of newsprint paper."

The documents accompanying the second draft were similar to those accompanying the first, except as to the number of rolls, weight of paper, omission of the affidavit of Walker, but with a statement: " Paper equal to original sample in test 11/12–32 pounds; " and a negotiable dock delivery order on the Seager Steamship Co., Inc.

The complaint also alleged defendant's refusal to pay; a statement of the amount of loss upon the resale of the paper due to a fall in the market price; expenses for lighterage, cartage, storage and insurance amounting to $3,045.02; an assignment of the cause of action by Ronconi & Millar to the plaintiff; and a demand for judgment.

The answer denied, upon information and belief, many of the allegations of the complaint, and set up (a) as an affirmative defense, that plaintiff's assignor was required by the letter of credit to furnish to the defendant " evidence reasonably satisfactory " to it that the paper shipped to the Sun-Herald Corporation was of a bursting or tensile strength of eleven to twelve points at a weight of paper of thirty-two pounds; that neither the plaintiff nor its assignor, at the time the drafts were presented, or at any time thereafter, furnished such evidence; (b) as a partial defense, that when the draft for $46,301.71 was presented, the defendant notified the plaintiff there had not been presented " evidence reasonably satis-

factory " to it, showing that the newsprint paper referred to in the documents accompanying said drafts was of the tensile or bursting strength specified in the letter of credit; that thereupon an agreement was entered into between plaintiff and defendant that the latter should cause a test to be made of the paper represented by the documents then presented and if such test showed that the paper was up to the specifications of the letter of credit, defendant would make payment of the draft; (c) for a third separate and distinct defense that the paper tendered was not, in fact, of the tensile or bursting strength specified in the letter of credit; (d) for a fourth separate and distinct defense that on or about January 15, 1921, and after the respective drafts referred to in the complaint had been presented to defendant for payment and payment refused, and at a time when the paper was owned and possessed by plaintiff or Ronconi & Millar, the Sun-Herald Corporation, in accordance with whose instructions and for whose account the letter of credit was issued, offered to the plaintiff that it would accept the newsprint paper referred to and pay for the same at a price of eight and one-half cents per pound, provided the plaintiff or its assignor would promptly and reasonably satisfy the Sun-Herald Corporation that the newsprint paper tested as much as eleven points to thirty-two pounds as specified in the letter of credit, and was of the sizes specified therein; that the plaintiff refused to accept said offer; and (e) as a fifth separate and partial defense, all of the allegations of the fourth defense were repeated.

After issue had been joined the plaintiff moved, upon the pleadings and affidavits, pursuant to rule 113 of the Rules of Civil Practice, to strike out the answer and for summary judgment.

The claim for damages for the non-payment of the third draft was, apparently, abandoned at or prior to the time the motion was made. It is unnecessary, therefore, to

further consider that and it will not be again referred to in the discussion as to the first two drafts.

The motion for summary judgment was denied and the defendant appealed to the Appellate Division, where the order denying the same was unanimously affirmed, leave to appeal to this court granted, and the following question certified: "Should the motion of the plaintiff for summary judgment herein have been granted?"

It is unnecessary to consider the denials contained in the answer, since in the answering affidavits defendant raised no issue as to any of the facts alleged in the complaint and in the plaintiff's affidavits upon which the motion was based. Defendant's affidavits used in opposition to the motion merely repeat the various denials contained in the answer. These denials were insufficient to raise an issue on a motion for summary judgment, since, under the rule, *facts* must be presented rather than mere general or specific denials in order to defeat a motion. (Rules Civ. Prac., rule 113; *General Investment Co.* v. *Interborough R. T. Co.*, 235 N. Y. 133, 139.)

I am of the opinion that the order of the Appellate Division and the Special Term should be reversed and the motion granted. The facts set out in defendant's answer and in the affidavits used by it in opposition to the motion are not a defense to the action.

The bank issued to plaintiff's assignor an irrevocable letter of credit, a contract solely between the bank and plaintiff's assignor, in and by which the bank agreed to pay sight drafts to a certain amount on presentation to it of the documents specified in the letter of credit. This contract was in no way involved in or connected with, other than the presentation of the documents, the contract for the purchase and sale of the paper mentioned. That was a contract between buyer and seller, which in no way concerned the bank. The bank's obligation was to pay sight drafts when presented if accompanied by genuine documents specified in the letter of credit. If

the paper when delivered did not correspond to what had been purchased, either in weight, kind or quality, then the purchaser had his remedy against the seller for damages. Whether the paper were what the purchaser contracted to purchase did not concern the bank and in no way affected its liability. It was under no obligation to ascertain, either by a personal examination or otherwise, whether the paper conformed to the contract between the buyer and seller. The bank was concerned only in the drafts and the documents accompanying them. This was the extent of its interest. If the drafts, when presented, were accompanied by the proper documents, then it was absolutely bound to make the payment under the letter of credit, irrespective of whether it knew, or had reason to believe, that the paper was not of the tensile strength contracted for. This view, I think, is the one generally entertained with reference to a bank's liability under an irrevocable letter of credit of the character of the one here under consideration. (See Commercial Letters of Credit, 35 Harvard Law Review, 730, 734, 735, and authorities there cited; *National City Bank* v. *Seattle National Bank,* 121 Wash. 476; *Bank of Plant City* v. *Canal-Commercial Trust & Savings Bank,* 270 Fed. Rep. 477; *International Banking Corp.* v. *Irving National Bank,* 274 Fed. Rep. 122, 125; affd., 283 Fed. Rep. 103; *Harper* v. *Hochstim,* 278 Fed. Rep. 102; *Horst Co.* v. *Biddell Brothers,* [1912] App. Cas. 18, revg. [1911] 1 K. B. 934; *Brown* v. *Raritan Chemical Works, Inc.,* 188 App. Div. 578, 584.)

The defendant had no right to insist that a test of the tensile strength of the paper be made before paying the drafts. Nor did it even have a right to inspect the paper before payment, to determine whether it in fact corresponded to the description contained in the documents. The letter of credit did not so provide. All that the letter of credit provided was that documents be presented which described the paper shipped as of a certain size,

weight and tensile strength. To hold otherwise is to read into the letter of credit something which is not there, and this the court ought not to do, since it would impose upon a bank a duty which in many cases would defeat the primary purpose of such letters of credit. This primary purpose is an assurance to the seller of merchandise of prompt payment against documents.

It has never been held, so far as I am able to discover, that a bank has the right or is under an obligation to see that the description of the merchandise contained in the documents presented is correct. A provision giving it such right, or imposing such obligation, might, of course, be provided for in the letter of credit. The letter under consideration contains no such provision. If the bank had the right to determine whether the paper were of the tensile strength stated, then it might be pertinent to inquire how much of the paper must it subject to the test? If it had to make a test as to tensile strength, then it was equally obligated to measure and weigh the paper. No such thing was intended by the parties and there was no such obligation upon the bank. The documents presented were sufficient. The only reason stated by defendant in its letter of December 18, 1920, for refusing to pay the draft, was that " there has arisen a reasonable doubt regarding the quality of the newsprint paper. * * *. Until such time as we can have a test made by an impartial and unprejudiced expert we shall be obliged to defer payment." This being the sole objection, the only inference to be drawn therefrom is that otherwise the documents presented conformed to the requirements of the letter of credit. All other objections were thereby waived. (*International Banking Corp.* v. *Irving National Bank, supra.*)

It is also suggested that the dock delivery order upon the presentation of the second draft was insufficient because it required that the paper be removed from the dock within four days from the date of the order. No

objection was made on this ground by the bank at the time the documents were tendered and such objection, if valid, was thereby waived. (*Littlejohn* v. *Shaw*, 159 N. Y. 188.) If the time were insufficient, further time might have been obtained. This claim was first referred to in defendant's letter of January 12, 1921, addressed, not to the plaintiff, but to the National City Bank of New York, which is not a party to this action, and the letter was not sent until the day after the time limit had expired.

It is not suggested that the dock delivery order did not carry control of the goods during the four days mentioned, or that the paper could not have been removed within that time. Then, too, if defendant required more time for the removal of the goods, it should have requested it when the documents were tendered on the 7th of January and doubtless any further time required could have been arranged for.

Some criticism is made as to the statement contained in the documents when the second draft was presented. The criticism, really, is directed towards the expressions " In Test 11/12, 32 # " and " Paper equal to original sample in test 11/12, ·32 pounds." It is claimed that these expressions are not equivalent to " rolls to test 11–12, 32 Lbs." I think they are. I do not see how any one could have been misled by them or misunderstood them. The general rule is that an obligation to present documents is complied with if any of the documents attached to the draft contain the required description. The purpose, obviously, was to enable defendant to know that dock delivery orders had been issued for the paper. (*Border National Bank* v. *American National Bank*, 282 Fed. Rep. 73, 80.)

The alleged oral agreement for a test was unenforcible against plaintiff. It is not alleged that Ronconi & Millar, the beneficiaries of the letter of credit, were parties to this alleged modification of it. They did not assign it to the plaintiff until May 25, 1921, five months after the

agreement is alleged to have been made. The letter of credit could not have been modified in this way by parol. (*Seitz* v. *Brewers Refrigerating M. Co.*, 141 U. S. 510; *Gilbert* v. *Moline Plough Co.*, 119 U. S. 491.) Since the defendant was already bound by its letter of credit to pay the drafts on presentation of the documents, without any inspection of the goods, there was no consideration for the alleged new promise and the same, even if made, was invalid. (1 Williston on Contracts, sec. 130; *Vanderbilt* v. *Schreyer*, 91 N. Y. 392; *Sawyer* v. *Dean*, 114 N. Y. 469; *Arend* v. *Smith*, 151 N. Y. 502; *Weed* v. *Spears*, 193 N. Y. 289.)

Defendant largely relies upon *Bank of Montreal* v. *Recknagel* (109 N. Y. 482, 492) and *Portuguese American Bank* v. *Atlantic National Bank* (200 App. Div. 575). Each of these cases is distinguishable from the present case. In *Bank of Montreal* v. *Recknagel* (*supra*) the letter of credit expressly required that the description of the goods should be contained in the bills of lading and this court said: " It was an integral part of the agreement of the parties that the bills of lading should contain a statement that manila hemp was shipped." As the bill of lading did not contain this statement, the court held that the bank was not justified in paying the drafts.

In *Portuguese American Bank* v. *Atlantic National Bank* (*supra*) the letter of credit did not call for any documents whatever. The defendant guaranteed payment of a draft drawn to cover the purchase price of certain specified merchandise to be shipped by the drawers to the drawees and it was held that the bank was not liable on the guaranty where it appeared that neither the draft nor the express company's receipt described the merchandise specified in the guaranty.

Finally, it is claimed that the plaintiff was not entitled to a summary judgment since there was an issue raised as to the amount of damages. It appears from the affidavits in support of the motion that after the defend-

ant had refused to pay the drafts, due notice was given to it by the plaintiff of its intention to sell the paper for the best price possible, although no notice of such resale was necessary. (Personal Property Law [Cons. Laws, ch. 41], sec. 141, subd. 4.) No attention was paid to the notice and the paper was sold as soon as practicable thereafter and for the best price obtainable, which represented the fair market value at the time of the sale. The plaintiff's damages were, primarily, the face amount of the drafts. Plaintiff, of course, was bound to minimize such damage so far as it reasonably could. This, it undertook to do by reselling the paper, and for the amount received, less expenses connected with the sale, it was bound to give the defendant credit. There was absolutely no statement in defendant's affidavits to the effect that the plaintiff did not act in the utmost good faith or with reasonable care and diligence in making the resale. The only reference thereto is that defendant did not get the best price possible. The defendant gave no evidence, however, of a market value at the time and the plaintiff submitted the affidavits of three dealers in paper that the paper was sold at the fair market value at the time of the sale. Plaintiff's damages were, therefore, liquidated by a resale on notice. (*Second National Bank* v. *Columbia Trust Co.*, 288 Fed. Rep. 17, 26.) This is the rule which has long prevailed between seller and buyer. The only requirement is that the resale must be a fair one. (*Pollen* v. *LeRoy*, 30 N. Y. 549; *Dustan* v. *McAndrew*, 44 N. Y. 72; *Smith* v. *Pettee*, 70 N. Y. 13; *General Electric Co.* v. *National Contracting Co.*, 178 N. Y. 369; *Jardine, Matheson & Co., Ltd.*, v. *Huguet Silk Co.*, 203 N. Y. 273.)

In *Dustan* v. *McAndrew* (*supra*) the goods were tendered on November thirtieth and sold by plaintiff on December twenty-sixth. This court held that the trial court did not err in charging the jury that the plaintiff was entitled to recover the difference between the contract price and the price he obtained on the resale and in

refusing the defendant's request that the court leave to the jury the question as to the market value of the goods at the time of the breach. EARL, J., who delivered the opinion of the court, said: " In such case, the vendor is treated as the agent of the vendee to make the sale, and all that is required of him is, that he should act with reasonable care and diligence, and in good faith. He should make the sale without unnecessary delay, but he must be the judge as to the time and place of sale, provided he act in good faith and with reasonable care and diligence. * * * We are, therefore, of the opinion, that the court did not err as to the rule of damages." (p. 79.)

There was a loss on the resale of the paper called for under the first draft of $5,447.26, and under the second draft of $14,617.53, making a total loss of $20,064.79, for which amount judgment should be directed in favor of the plaintiff.

The orders appealed from should, therefore, be reversed and the motion granted, with costs in all courts. The question certified is answered in the affirmative.

CARDOZO, J. (dissenting). I am unable to concur in the opinion of the court.

I assume that no duty is owing from the bank to its depositor which *requires* it to investigate the quality of the merchandise (*Laudisi* v. *American Ex. Nat. Bank*, 239 N. Y. 234). I dissent from the view that if it chooses to investigate and discovers thereby that the merchandise tendered is not in truth the merchandise which the documents describe, it may be forced by the delinquent seller to make payment of the price irrespective of its knowledge. We are to bear in mind that this controversy is not one between the bank on the one side and on the other a holder of the drafts who has taken them without notice and for value. The controversy arises between

26

the bank and a seller who has misrepresented the security upon which advances are demanded. Between parties so situated, payment may be resisted if the documents are false.

I think we lose sight of the true nature of the transaction when we view the bank as acting upon the credit of its customer to the exclusion of all else. It acts not merely upon the credit of its customer, but upon the credit also of the merchandise which is to be tendered as security. The letter of credit is explicit in its provision that documents sufficient to give control of the goods shall be lodged with the bank when drafts are presented. I cannot accept the statement of the majority opinion that the bank was not concerned with any question as to the character of the paper. If that is so, the bales tendered might have been rags instead of paper, and still the bank would have been helpless, though it had knowledge of the truth, if the documents tendered by the seller were sufficient on their face. A different question would be here if the defects had no relation to the description in the documents. In such circumstances, it would be proper to say that a departure from the terms of the contract between the vendor and the vendee was of no moment to the bank. That is not the case before us. If the paper was of the quality stated in the defendant's answer, the documents were false.

I think the conclusion is inevitable that a bank which pays a draft upon a bill of lading misrepresenting the character of the merchandise may recover the payment when the misrepresentation is discovered, or at the very least the difference between the value of the thing described and the value of the thing received. If payment might have been recovered the moment after it was made, the seller cannot coerce payment if the truth is earlier revealed.

We may find persuasive analogies in connection with the law of sales. One who promises to make payment

in advance of delivery and inspection may be technically in default if he refuses the promised payment before inspection has been made. None the less, if the result of the inspection is to prove that the merchandise is defective, the seller must fail in an action for the recovery of the price. The reason is that " the buyer would have been entitled to recover back the price if he had paid it without inspection of the goods " (2 Williston on Sales [2d ed.], §§ 479, 576).

I think the defendant's answer and the affidavits submitted in support of it are sufficient to permit a finding that the plaintiff's assignors misrepresented the nature of the shipment. The misrepresentation does not cease to be a defense, partial if not complete, though it was innocently made (*Bloomquist* v. *Farson,* 222 N. Y. 375; 2 Williston on Sales [2d ed.], § 632).

The order should be affirmed and the question answered " no."

HISCOCK, Ch. J., POUND and ANDREWS, JJ., concur with MCLAUGHLIN, J.; CARDOZO, J., reads dissenting opinion in which CRANE, J., concurs; LEHMAN, J., not sitting.

Orders reversed, etc.