FIRST WISCONSIN NATIONAL BANK OF MILWAUKEE, Respondent, vs. FORSYTH LEATHER COMPANY, Appellant.

*December 12, 1925—January 12, 1926.*

*Banks: Letter of credit: Revocability: What law governs: Liability of bank to third party under letter of credit: Drafts drawn against letter: Sufficiency of accompanying documents.*

1. A letter of credit is a contract, to be construed as other contracts.    p. 14.
2. Where a letter of credit was entered into by mail pursuant to the ordinary rules of business, the various letters and inclosures are to be construed together as one transaction. p. 14.
3. Facts showing that a letter of credit issued by a bank at the request of the buyer to finance a foreign shipment of goods was considered by all parties as irrevocable, obligated the bank to pay a draft drawn by the shipper, regardless of a request by the buyer before the draft was paid to cancel the letter of credit.    p. 15.

4. The contract between the buyer and the bank for the issuance of the letter of credit being governed by the law of this state and being made for the benefit of a third party, it is enforceable by the shipper according to its terms.  p. 16.

5. Items in an invoice covering the shipment which charged certain amounts for weighing and bundling and for the shipment may reasonably be included under the contract, which provided for payment by the buyer of cost, insurance, and freight; and where the question of the sufficiency of the documents attached to the shipper's draft was left to the bank, the buyer cannot claim against the bank which honored a draft including these items that the invoice did not conform to the letter of credit.  p. 16.

6. A bank which issues an irrevocable letter of credit is not concerned with the quality or kind of goods delivered under the contract, its sole duty being to see that the invoice and other required documents accompany the draft; and if they are fair on their face as required by the letter of credit, it is the duty of the bank to accept and pay the draft.  p. 17.

. APPEAL from a judgment of the circuit court for Milwaukee county: W. B. QUINLAN, Judge.  *Affirmed.*

Action by the plaintiff, *First Wisconsin National Bank* of Milwaukee, against the defendant, the *Forsyth Leather Company,* for the amount of a draft drawn against the plaintiff in connection with a letter of credit issued by the plaintiff at the request of the defendant.

The issues may be briefly stated as follows: The plaintiff was engaged in the banking business in the city of Milwaukee.  The defendant was engaged in the manufacture of patent leather at Wauwatosa.  At the request of the defendant the bank issued a letter of credit in favor of Persson & Company of New York.  In due course of business the bank was drawn upon by draft pursuant to the letter of credit, and the draft was honored and paid.  Before the draft was paid the defendant sought to have the bank cancel its letter of credit and refuse payment of the draft.  The bank refused.  The defendant refused to reimburse the bank, and the bank sued.

The case was tried before the court without a jury.  The court made its findings of fact and conclusions of law, and

entered judgment thereon in favor of the plaintiff. Defendant appeals. The pertinent facts are stated in the opinion.

For the appellant there was a brief by *Fawsett, Smart & Shea* of Milwaukee, and oral argument by *Edmund B. Shea*.

For the respondent there was a brief by *Miller, Mack & Fairchild,* and oral argument by *Paul R. Newcomb,* all of Milwaukee.

CROWNHART, J. On March 1, 1922, the defendant wrote to the plaintiff as follows:

"Confirming telephone conversation of this morning, we are inclosing herewith two copies of contract, for which kindly open letters of credit as follows:

"1. . . .

"2. Ninety-day letter of credit in favor of Persson & Company for $12,500 covering purchase of 3,500 B. A. Matadero Kips; this letter of credit to expire May 1, 1922."

Inclosed with this letter was a contract between the defendant company and Persson & Company of New York, which contract read as follows:

"*Forsyth Leather Co.,*                    Feb. 21, 1922.
          "Wauwatosa, Wis.
               "*Contract.*

"Gentlemen: We confirm our sale and your purchase of the following:

"*Kind:* Wet salted washed B. A. Matadero Kips, Frigorifico type, ranging from 7/15 kilos per kip, averaging about 11/12 kilos, all short-haired, fresh, clean stock.

"*Quantity:* About 3,500.

"*Price:* 13½¢. per lb. shipping weight, c. i. f. New York; shrinkage in transit guaranteed not to exceed 10 %.

"*Shipment:* Prompt shipment from Buenos Aires.

"*Terms:* Ninety days' confirmed letter of credit to be opened in our favor with a New York bank for $12,500, and available by our ninety days' drafts with ocean documents and invoice attached. Same to remain in force until May 1, 1922.

"Any discrepancy in the quality to be settled in the usual manner by New York arbitration.

"The fulfilment of this contract is subject to contingencies beyond our control.

"Very truly yours,

"PERSSON & Co.

"The Forsyth Lea. Co.                    By C. Persson.

"E. H. Graber, Treas."

Pursuant to such request, on March 2d the plaintiff issued its letter of credit to Persson & Company as follows:

"We hereby authorize you to value on the *First Wisconsin National Bank* of Milwaukee, Wis., for account of the *Forsyth Leather Company,* Wauwatosa, Wisconsin, for any sum or sums not exceeding in all twelve thousand five hundred dollars ($12,500), by bills at ninety (90) days' sight, against shipment of about 3,500 wet salted washed B. A. Matadero Kips, Frigorifico type, ranging from 7/15 kilos per kip, averaging about 11/12 kilos, all short-haired, fresh clean stock, @ 13½¢. per lb., to Wauwatosa, Wis.

"The bills of lading must be issued to the order of the *First Wisconsin National Bank* of Milwaukee, Wis.

"Terms: Cost, insurance, freight New York. Shrinkage in transit guaranteed not to exceed 10 %.

"The shipment must be completed and the bills drawn on or before May 1, 1922, accompanied by bills of lading and abstract of invoice, on receipt of which documents the bills will be duly honored. Advice thereof to be sent to the foreign department of the *First Wisconsin National Bank* of Milwaukee, Wis.

"We hereby agree with the drawers, indorsers, and *bona fide* holders of drafts drawn under and in compliance with the terms of this credit that the same shall be duly honored at the office of the *First Wisconsin National Bank* of Milwaukee; payable when due at the *First Wisconsin National Bank* of Milwaukee.

"Drafts drawn under this credit must be marked 'Drawn under *First Wisconsin National Bank* of Milwaukee Credit C–558.' "

On the same day it advised the defendant by letter of the issuance of the letter of credit, inclosing a copy thereof,

and also inclosing an obligation or guaranty to secure the plaintiff for any payment made under the letter of credit, which obligation the defendant was requested to execute and return to the bank. The plaintiff in the same letter also inclosed a formal application in duplicate for the issuance of the letter of credit, to be signed by defendant and returned. The obligation and the application were both promptly executed by the defendant and returned to the plaintiff.

The first contention of the defendant is that the letter of credit constituted merely an offer by the plaintiff to Persson & Company, which was not binding upon the plaintiff until Persson & Company should accept the offer by performing its obligation thereunder. In other words, it is claimed on the part of the defendant that the letter of credit was revocable, and that the defendant had demanded that the letter of credit be revoked prior to such acceptance. The plaintiff's contention is that the letter of credit was irrevocable, and that it was under obligation to accept and pay the draft when accompanied by the proper documents, irrespective of the demands of the defendant to cancel the letter.

It is undisputed that both irrevocable and revocable letters of credit are issued in the ordinary course of banking business. It seems to be the practice to issue such letters by expressly designating therein their character, as "irrevocable" or "revocable," but it also appears that letters of credit are issued without such designation. Where letters are so issued without express designation, there is authority to the effect that they are revocable. 6 Ruling Case Law, 606; *Moss v. Old Colony T. Co.* 246 Mass. 139, 140 N. E. 803; *Banco Nacional Ultramarino v. First Nat. Bank,* 289 Fed. 169. And other authority to the effect that they are irrevocable: *American S. Co. v. Irving Nat. Bank,* 266 Fed. 41; *Maurice O'Meara Co. v. Nat. Park Bank,* 239 N. Y. 386, 146 N. E. 636, 39 A. L. R. 747, and note. This ques-

tion has never been passed upon in this state, and we approach it as a case of first impression.

A letter of credit is a contract, to be construed as other contracts. *Moss v. Old Colony T. Co.* 246 Mass. 139, 140 N. E. 803. Where a contract is indefinite or uncertain as to its terms, resort is had to all the surrounding facts and circumstances to determine its proper construction. 6 Ruling Case Law, p. 850, § 240. Here the contract was entered into through communications by mail, pursuant to the ordinary course of business. We think there can be no doubt but that the various letters and inclosures are to be construed together as one transaction.

In the formal application for the letter of credit, it will be noted that the request was to establish a "documentary letter of credit under our guaranty." In the contract between the defendant and Persson & Company accompanying the request to issue the letter of credit, defendant was required to furnish "ninety days' confirmed letter of credit to be opened in our favor with a New York bank for $12,400, and available by our ninety days' drafts with ocean documents and invoice attached," and in the guaranty by defendant to plaintiff it is recited:

"Whereas, the *First Wisconsin National Bank* of Milwaukee, Wisconsin, did at our request, on March 2, 1922, open its irrevocable Credit No. C–558, in favor of Messrs. Persson & Company. . . ."

It appears by the contract between defendant and Persson & Company that the defendant agreed to purchase certain hides from Persson & Company, who in turn were to purchase the hides at Buenos Aires, South America. The contract provided for a letter of credit to be drawn against when accompanied by "ocean documents and invoice." This would indicate that the contract price was payable as soon as the goods were loaded on board ship at Buenos Aires and the proper documents attached to the draft. However,

the letter of credit issued by the bank, as interpreted by Persson & Company, provided for inland bill of lading instead of ocean bill of lading, and in order that Persson & Company might finance the shipment from Buenos Aires to New York, Persson & Company wrote the plaintiff:

"Inasmuch as this credit calls for 'inland' bill of lading instead of ocean bill of lading from Buenos Aires to New York as stipulated in our contract to *Forsyth Leather Company,* and said inland bill of lading not being obtainable until the actual arrival and reshipment of the goods at this port, we have today wired the *Forsyth Leather Company* to kindly have the credit extended to June 1 and to ask you to kindly advise us of this fact by special-delivery letter."

The defendant requested the extension of time of the plaintiff accordingly, and the letter was extended pursuant to such request to June 1st.

In order to finance the shipment from Buenos Aires to New York, Persson & Company assigned its rights under the contract, accompanied by a draft in blank covering the shipment, to Levison & Company of New York, and Levison & Company thereupon procured an irrevocable letter of credit to be issued in favor of the consignor of the hides at Buenos Aires.

It would seem plain from these transactions that all the parties considered the letter of credit to be irrevocable. The guaranty by defendant to the plaintiff expressly so recited, and as between the plaintiff and defendant they are bound by such recital. Here was a case where Persson & Company were required to make large commitments, and in order to finance the transaction they expressly requested of the defendant a letter of credit to be used accordingly. It would seem to be wholly unreasonable to say, under the circumstances, that such letter of credit should be treated merely as an offer, which might be revoked at any time before the goods were actually loaded on cars in New York. Persson & Company would be obliged to receive and pay

for the goods in New York, and then if the letter of credit were treated as revocable the defendant might revoke the same and Persson & Company would be left with the goods on their hands without security.

We think there is a further reason why the defendant is held liable under its guaranty. The contracts between the plaintiff and defendant were Wisconsin contracts and are governed by the Wisconsin law. It is the well settled law of this state that a contract made between two parties for the benefit of a third party is enforceable by such third party according to its terms. *Sedgwick v. Blanchard,* 164 Wis. 421, 160 N. W. 267, and cases there cited. The letter of credit here issued was unquestionably for the benefit of Persson & Company. It was issued upon sufficient consideration, and the plaintiff was liable to Persson & Company under its contract with the defendant.

For the reasons stated, we must hold that the letter of credit was irrevocable, and that the plaintiff was bound to accept the draft of Persson & Company when accompanied by the proper documents. The attempt of defendant to have the letter of credit canceled was wholly unavailing.

The defendant makes the further contention that the draft and shipping documents did not conform to the requirements of the letter of credit, in that the invoice covering the shipment contained two items, as follows: "To weighing and bundling (1,750 bundles), $274.09; to shipment, $9." Referring to the guaranty agreement of the defendant to the plaintiff, it will be seen that the determination of the question as to whether the documents were sufficient was left to the plaintiff for decision. The terms of the contract between plaintiff and Persson & Company provided for "cost, insurance, freight New York." It is quite reasonable to interpret this as including the items in question; at least the plaintiff could not be charged with any wrongful conduct if it did so determine. Besides, the treasurer of the defendant company testified that there was ap-

parently no difference between the invoice and the letter of credit. The real difference between the defendant and Persson & Company was in the quality of the goods, and the defendant made no objection to the draft at the time as to the items above specified.

It is a general rule that the bank issuing an irrevocable letter of credit is not concerned with the quality or kind of goods delivered under the contract. Its sole duty is to see that the invoice and other required documents accompany the draft. If they are fair on their face, as required by the letter of credit, it is the duty of the bank to accept and pay the draft. See annotation, 39 A. L. R. 757.

We think that, under all the circumstances, the plaintiff bank was liable under its letter of credit to accept and pay the draft drawn pursuant thereto, and the judgment of the circuit court must be affirmed.

*By the Court.*—The judgment of the circuit court is affirmed.