## FIRST DEPARTMENT, JULY, 1961

### (July 6, 1961)

■ CHARLES H. TRUMAN et al., as Copartners Doing Business under the Name of TRUMAN, WASSERMAN & Co., Respondents, v. BERLANTI CONSTRUCTION Co., INC., Appellant. (Action No. 1.) CHARLES H. TRUMAN et al., as Copartners Doing Business under the Name of TRUMAN, WASSERMAN & Co., Respondents, v. BERLANTI CONSTRUCTION Co., INC., Appellant. (Action No. 2.) CHARLES H. TRUMAN et al., as Copartners Doing Business under the Name of TRUMAN, WASSERMAN & Co., Respondents, v. BERLANTI CONSTRUCTION Co., INC., et al., Defendants, and LOUIS BERLANTI et al., Appellants. (Action No. 3.) TRUMAN, WASSERMAN & Co., Respondent, v. HARTFORD ACCIDENT & INDEMNITY Co., Appellant, and BERLANTI CONSTRUCTION COMPANY, INC., Intervenor-Appellant. (Action No. 4.)

STEUER, J. (dissenting). I dissent in Action No. 4. The facts in that action are inextricably bound up with the facts in Actions 1, 2 and 3, tried together with that action and as to which the Bench is in accord as to the proper disposition. It is necessary in order to discuss that action to make reference to certain of the facts in the other actions.

Berlanti Construction Co. had a contract with the Cuban government for the construction of certain housing. It was a term of that contract that Berlanti would procure the deposit of $10,000,000 in the Bank of Nova Scotia. Said bank had agreed to pay 5% interest on a time deposit in that sum for a period of five years. Plaintiffs were hired by Berlanti to find a depositor who would be willing to make the deposit. It was contemplated that such a depositor, if found, would require interest in excess of the 5% to be paid by the bank. It was understood that, if such excess was required, Berlanti would pay the same and would secure it by a surety company bond. It was further understood by the plaintiffs that it was their obligation to procure the deposit at the best possible terms to Berlanti. In the course of negotiations, plaintiffs reached the conclusion that a depositor would require 5½% interest, and Berlanti was agreeable to such a payment. Arrangements were made with the Hartford Accident & Indemnity Company to issue such a bond.

During the negotiations the plaintiffs spoke with several proposed depositors who demanded various rates of interest, and bonds to accord with these rates were from time to time prepared. All bonds were issued to plaintiffs or their assignees, as plaintiffs never revealed either to Berlanti or defendant the name of the proposed depositor.

On November 19, 1958, plaintiffs expected that the deposit would be procured at a rate less than 5½% and requested that any difference between the rate of 5½% and that at which the deposit would be made be paid to them as an additional fee. They prepared a letter agreement to that effect. There is a discrepancy in the testimony of the parties as to this letter, Berlanti claiming that they refused to make any such agreement and plaintiffs claiming that Berlanti was willing to do so. It is, however, beyond dispute that on that occasion Berlanti refused to sign the letter. An agent for the defendant,

present at that time, also refused to make any commitment on behalf of defendant in that connection. However, it is conceded that it was at that time that bonds in various sums were directed to be prepared.

The main contract between the Cuban government and Berlanti was executed on November 20. The time deposit was made on November 21 by Carl M. Loeb-Rhoades & Co. at a rate of $5\frac{1}{4}\%$. The bond to secure the Loeb Company was delivered to them on November 24. On the same day, plaintiffs requested a similar bond representing an amount equal to one fourth of 1% interest, or $125,000. The following day Berlanti visited plaintiffs and had with him a bond in that sum. A discussion followed as to which there is not complete agreement. Plaintiffs claim that they demanded the bond because they were entitled to additional commissions, and Berlanti that plaintiffs asked for it as money representing some extra payment that was exacted by Carl M. Loeb-Rhoades & Co. In any event, the bond was delivered by Berlanti, and each side claims that the delivery was made in accord with its respective version of the discussion.

It will be seen that there are grave difficulties in accepting either party's version of this transaction. Plaintiffs had agreed upon a fixed fee for their services. That fee was $100,000 and it was not contemplated that they would receive anything in excess of that sum. It is further established that plaintiffs realized that it was their duty to their clients to procure the deposit at the lowest possible rate of interest. To claim now that they were entitled to the fruits of any savings is to deprive their client of the benefit of their services. This, coupled with the fact that Berlanti, when requested to make an additional payment for plaintiffs' services at a time when negotiations for the loan had not been completed, had refused or at least failed to agree in writing to that effect, makes it difficult to believe that after the plaintiffs had completely performed Berlanti would then agree to additional compensation. On the other hand, there is no credible explanation as to why the additional bond was delivered to plaintiffs. It is hard to believe that Berlanti would accept the statements he claimed were made to him as to the depositor's demands, or that, if he did accept, he would accord with them, as he had already received the benefits of the deposit and the depositor would be powerless to affect him if he, Berlanti, refused any additional payment. In the face of this dilemma, it is not unreasonable to accept the trial court's finding that the discussion was as the plaintiffs claimed and that the bond was delivered for additional compensation. This is so even though the resulting compensation was substantially more than twice as much as the plaintiffs had not only bargained but performed for.

Even accepting this version of the facts, a cause of action is not established. At the time that the extra compensation was agreed upon and the bond delivered, plaintiffs had already performed all that they were required to do under their agreement. Accordingly, an agreement to pay more would be without consideration. As stated by one of the early distinguished writers: "'neither the promise to do a thing, nor the actual doing of it, will be a good consideration if it is a thing which the party is bound to do by the general law, or by a subsisting contract with the other party'" (Pollock, Principles of Contract, 161, as quoted with approval *Vanderbilt* v. *Schreyer*, 91 N. Y. 392, 401; see, also, *O'Meara Co.* v. *National Park Bank*, 239 N. Y. 386, 399; 1 Williston, Contracts [3d ed.], § 130).

The question whether an actual payment made at that time would be recoverable back by Berlanti does not arise. No payment was made and no funds were transferred to plaintiffs. What plaintiffs received was an agreement to pay in the future, which is the bond being sued upon. There can be no

distinction between a promise made by the defendant as surety for the original obligor and a promise by the obligor himself. If plaintiffs have no claim against Berlanti, they would have no claim on Berlanti's surety.

No cause of action having been established, the complaint should have been dismissed.

Botein, P. J., Breitel, McNally, Stevens and Steuer, JJ., concur in decisions in Actions Nos. 1, 2 and 3.

Botein, P. J., Breitel, McNally and Stevens, JJ., concur in decision in Action No. 4; Steuer, J., dissents in opinion.

In Actions Nos. 1, 2 and 4 judgments affirmed, without costs. In Action No. 3 judgment reversed, etc.